NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY *vs.* HARRY BUTTER & another.

Suffolk.    May 11, 1931. — June 25, 1931.

Present: CROSBY, PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Contract*, Construction, Performance and breach, For the sale of real estate. *Equity Jurisdiction*, Specific performance.

A contract for the sale of real estate provided that the premises should be conveyed "by a good and sufficient quitclaim deed" on July 1, 1927, and that "In case the . . . [seller] cannot give a good and

sufficient deed then the obligations of both parties shall cease." In a suit in equity for specific performance commenced by the purchaser in October, 1928, it was found that the defendant was unable to give a good and sufficient deed on July 1, 1927, by reason of the existence of an attachment and of a mortgage upon the land; that on that date no future day was set for the passing of papers; that there was no meeting of the parties nor communication between them during the next four months; that, in December, 1927, the defendant procured the release of the attachment and discharge of the mortgage and placed a new mortgage upon the land; that he was unable to secure a discharge of the new mortgage; that he was not guilty of collusion or bad faith; that there was no waiver by him of any of the conditions of the agreement; that, although the time of giving the deed was not of the essence of the contract, the plaintiff was not entitled to specific performance by reason of his delay; and that the defendant had a right to rely upon the provision of the agreement that the obligations of both parties should cease in the event that he should be unable to give a good and sufficient deed on July 1, 1927. A final decree was entered dismissing the bill. *Held*, that

(1) The attachment upon the land on the date set for conveyance was sufficient to prevent the defendant from giving "a good and sufficient deed";

(2) In view of the findings that there was no collusion, bad faith nor waiver on the part of the defendant, his obligation to convey ceased by reason of the provision of the contract above quoted: that provision was for his benefit as well as that of the plaintiff;

(3) The defendant was entitled to rely on said provision even though time was not of the essence of the contract and the attachment subsequently was released;

(4) Furthermore, the existence of the new mortgage made operative said provision, the defendant not having been guilty of collusion or bad faith in giving it;

(5) In the circumstances, the decree was proper and was affirmed.

BILL IN EQUITY, filed in the Superior Court on October 22, 1928, and described in the opinion, against Harry Butter and Newburyport Five Cents Savings Bank.

The defendant Newburyport Five Cents Savings Bank demurred. An interlocutory decree sustaining the demurrer and a final decree dismissing the bill as against that defendant were entered by order of *Donahue*, J. The plaintiff appealed.

The suit thereafter was heard by *Donahue*, J., a stenographer having been appointed under G. L. c. 214, § 24; Equity Rule 29 (1926). The judge found that "The time of giving the deed was not of the essence of the contract by the terms of the agreement, nor was it made so by the

parties, but I find that by reason of the plaintiff's delay the plaintiff is not equitably entitled to specific performance"; and that the replacement of the mortgages and release of the attachment were in December, 1927. Other findings and evidence are stated in the opinion. A final decree was entered dismissing the bill. The plaintiff appealed.

*A. W. Blackman,* (*P. F. Perkins* with him,) for the plaintiff.

*H. Kahn, J. I. Yoffa,* & *L. Mazzola, Jr.,* for the defendant Butter, submitted a brief.

*N. N. Jones* & *P. I. Lawton,* for Newburyport Five Cents Savings Bank, submitted a brief.

CROSBY, J.  This bill in equity is brought for specific performance of a written agreement, dated May 19, 1927, for the conveyance of a parcel of land adjoining the plaintiff's location.  The agreement recites that the land is to be conveyed by the defendant Butter to the plaintiff "by a good and sufficient quitclaim deed . . . on the 1st day of July, 1927, at 12 noon," and provides that "In case the party of the first part cannot give a good and sufficient deed then the obligations of both parties shall cease."  The bill alleges in the second paragraph that "The respondent Butter was unable, on the first day of July, 1927, to give a good and sufficient deed because of the existence of an attachment in an action commenced in the Superior Court by one Phillip Lewis against the respondent Butter; said attachment covered the larger of the two combined lots of land, from the westerly margin of which lots the ten foot strip or 'parcel' embraced by said agreement is taken."  The bill further alleges that the requirement of performance on July 1, 1927, was mutually waived by the parties, and was extended until such time as the defendant Butter could have such attachment released; that on or about December 9, 1927, the attachment was dissolved, and the plaintiff is ready to perform, but the defendant Butter refuses to do so; and that a mortgage upon the property, held by the Beacon Trust Company and existing on the date of the contract, has been discharged and a new mortgage to the defendant Newburyport

Five Cents Savings Bank has been placed thereon by the defendant Butter.

The trial judge found that the defendant Butter, who will hereafter be referred to as the defendant, was unable to give a good and sufficient deed on July 1, 1927, by reason of the existence of the attachment of record. He states, "I do not find that the defendant's inability to give such a deed was due to the defendant's fault or to collusion." He found that there was no waiver by the defendant of any of the conditions of the agreement; that in December, 1927, the situation of the defendant was changed. He could not find upon the evidence that the replacement of the mortgage was not something which the defendant was obligated to do, or that the change was made in bad faith. He further found that the time of giving the deed was not of the essence of the contract, and that the defendant had a right to rely upon the provision of the agreement that the obligations of both parties should cease in the event that he should be unable to give a good and sufficient deed on July 1, 1927. It is a general rule that "an agreement to sell land, and to give a good and sufficient deed of it, means a deed that will convey a good title to the land." *Linton* v. *Allen,* 147 Mass. 231, 237. An attachment upon the property to be conveyed will prevent a vendor from conveying a clear title. *Buckley* v. *Meer,* 251 Mass. 23. The attachment shown by the records was a cloud upon the defendant's title. *Marr* v. *Washburn & Moen Manuf. Co.* 167 Mass. 35, 36. *Flaherty* v. *Goldinger,* 249 Mass. 564, 567. *Abeloff* v. *Peacard,* 272 Mass. 56, 62. The trial judge rightly ruled in substance that the defendant's obligations under the agreement ceased, if, through no fault of his own, he was unable to give a good and sufficient deed on the day agreed on for the delivery thereof. The case at bar cannot be distinguished in principle from *Old Colony Trust Co.* v. *Chauncey,* 214 Mass. 271, *Lewenberg* v. *Johnson,* 224 Mass. 297, *Buckley* v. *Meer,* 251 Mass. 23, and *Drapen* v. *Foley,* 258 Mass. 167.

The language of the contract in the present case is similar to that construed in *Old Colony Trust Co.* v. *Chauncey,* 214 Mass. 271, where it was said at page 273: "The language

is plain and unequivocal. It does not make the duties and responsibilities of either party in that event depend upon the option of the other, but by apt language puts an end to the binding force of the contract as respects either party. Such a contract is not unreasonable, and it establishes important rights and duties. A land owner might be willing to sell only upon the assumption that his title was good, and prefer to keep it if any cloud upon it was disclosed, rather than to be at the expense of removing it, while a prospective purchaser might desire to agree to buy upon precisely these terms." Especially is this true in the present case where a small piece of land was contracted to be sold, and where the owner might prefer to keep the land rather than to take the risk of subsequent litigation. If, however, the vendor's title has been impaired by his own act he cannot have the benefit of a similar provision. See *Margolis* v. *Tarutz,* 265 Mass. 540; *J. J. Newberry Co.* v. *Shannon,* 268 Mass. 116.

The judge's finding that the defendant's inability to give a good and sufficient deed was not due to his fraud or collusion must stand, as the evidence warranted the finding and there is no evidence to the contrary. The finding that the defendant did not waive his right to rely upon the provision of the contract is justified by the evidence, all of which is recited in the record. The provision that "In case the party of the first part cannot give a good and sufficient deed then the obligations of both parties shall cease," was for the benefit of both the vendor and the purchaser, and not solely for the purchaser. The agreement is plainly distinguishable from that considered in *Dennett* v. *Norwood Housing Association, Inc.* 241 Mass. 516, upon which the plaintiff relies. See also *Cashman* v. *Bean,* 226 Mass. 198, 204.

There was no error in the ruling that "The time of giving the deed was not of the essence of the contract by the terms of the agreement, nor was it made so by the parties." *Mansfield* v. *Wiles,* 221 Mass. 75. We do not understand that this ruling is questioned by the plaintiff. The ruling that time was not of the essence of the contract does not

affect the rights of the defendant even if subsequently to July 1, 1927, the attachment was released of record.

The defendant is unable to secure a release of the present mortgage held by the Newburyport Five Cents Savings Bank as it will not execute such a release on conditions satisfactory to the plaintiff.  If this had been the state of affairs on July 1, 1927, the defendant could have refused to convey, as under the terms of the agreement he would have been unable to give a good and sufficient deed.  If in this suit he is ordered to convey he would be forced to do what under his contract he sought to avoid.  Such a result cannot be reached where, as here, no collusion or bad faith on his part is found.  As the defendant, without fault on his part, was unable to give a good title on July 1, 1927, by the terms of the contract the rights and obligations of both parties came to an end.  All the cases cited by the plaintiff are distinguishable in their facts from the case at bar.

The judge was unable to find that the mortgage to the defendant bank was executed other than in good faith, and the record discloses no evidence which would warrant a different finding.  He found that on July 1, 1927, the date set in the agreement for passing papers, the attachment was still of record, and the mortgage held by the Beacon Trust Company was an existing encumbrance; that on that date no future day was set for the passing of papers, and that there was no meeting of the parties or communication between them during the four months following July 1, 1927.  Upon these and the entire findings, it is plain that specific performance will not lie.  The contract did not restrict the defendant's use of the property for an unlimited time after July 1.

The final decrees dismissing the bill with costs, as to each defendant, are affirmed with costs of the appeals.

*Ordered accordingly.*