**BAY STATE HARNESS HORSE RACING AND BREEDING ASSOCIATION, INC., Plaintiff,**

v.

**PPG INDUSTRIES, INC., and Barry T. Hannon as he is Register of Deeds of Norfolk County, Massachusetts, Defendants.**

**Elliot J. ENGLANDER, Plaintiff,**

v.

**Beryl BREITSTEIN, and Barry T. Hannon as he is Register of Deeds of Norfolk County, Massachusetts, Defendants.**

**Civ. A. Nos. 72-2178-M, 72-3460-M.**

United States District Court, D. Massachusetts.

Aug. 7, 1973.

Phil David Fine, Boston, Mass., for plaintiff Bay State.

Malcolm D. Finks, Boston, Mass., for plaintiff Englander.

Philip T. Jones, Weymouth, Mass., for defendant PPG.

Saul Andelman, Boston, Mass., for defendant Breitstein.

Bruce G. McNeil, Boston, Mass., for defendant Hannon.

W.P. Colin Smith, Jr., Boston, Mass., on brief for amici curiae Sami J. and Nadia W. Baghdady.

Edward F. O'Brien, Worcester, Mass., on brief for amicus curiae Joseph A. Smith.

Neil Sugarman, Boston, Mass., on brief for amicus curiae Data Realty Corp.

Stephen F. Gordon, Boston, Mass., on brief for amicus curiae Commercial Law League of America.

Dennis M. O'Dea, Boston, Mass., on brief for amici curiae Stanley G. Welsh and Marjorie W. Whittemore.

D. K. Kasakoff, Worcester, Mass., on brief for amicus curiae Aberman Realty Building Corp.

Paul John Kilgarriff, Asst. Atty. Gen., for Commonwealth of Massachusetts.

Before COFFIN, Circuit Judge, MURRAY and FREEDMAN, District Judges.

## MEMORANDUM

FRANK J. MURRAY, District Judge.

The single issue in these cases is whether the Massachusetts statutes, Gen.Laws ch. 223, §§ 42, 62–66 (see Appendix), allowing prejudgment real estate attachments in actions commenced in Massachusetts courts without prior notice to the owner of the real estate and without prior opportunity to the owner to be heard are violative of the due process clause of the Fourteenth Amendment of the United States Constitution.

In each of the cases the complaint was brought under 42 U.S.C. § 1983. Jurisdiction of the court is invoked under 28 U.S.C. §§ 1331(a) and 1343. Since injunctive relief against an alleged Massachusetts state officer from enforcing a state statute is sought, a three-judge court was convened pursuant to 28 U.S.C. §§ 2281 and 2284, and the several cases were consolidated for trial.

I

The parties stipulated to certain facts as follows:

(A) In the case of Bay State Harness v. PPG Industries it is agreed that on November 10, 1971 PPG made a contract with Bay State to furnish labor and materials necessary to glass-enclose the clubhouse and grandstand at Bay State Raceway, a horse-racing track. Subsequently, PPG brought an action at law against Bay State arising out of that contract. The action was commenced by an original writ, dated February 25, 1972, upon which PPG caused an attachment in the amount of $150,000 to be made of Bay State's real estate by the deposit of a copy of the writ in the Registry of Deeds of Norfolk County. The attachment was made without notice to Bay State and without hearing.[1]

(B) In the case of Englander v. Breitstein it is agreed that Breitstein commenced an action of contract against Englander, as trustee of Housman Realty Trust, by a writ dated November 2, 1972, whereby an attachment in the amount of $100,000 of the real estate of Englander was made in accordance with the provisions of Mass.Gen.Laws ch. 223, §§ 42, 62–66. The defendant Barry T. Hannon as Register of Deeds for Norfolk County caused the attachment to be recorded. The attachment was made without prior notice to Englander, the owner of the property, and without any hearing.

Other parties, whose cases have raised the same issue of unconstitutionality of the Massachusetts attachment statutes, submitted briefs and have participated

---

1. Bay State has filed in its case the affidavit of its clerk, Robert Sylvia, averring that because of the attachment the ability of Bay State to transfer its real estate by way of mortgage and to receive consideration therefor has been impaired. PPG has moved to strike the affidavit. Since we are persuaded that the showing of actual harm is unnecessary to the determination of the case, the motion is hereby granted.

in the proceedings as *amici curiae.*[2] The facts in their cases are similar to the *Bay State* and *Englander* cases insofar as attachments of real estate were made without prior notice or hearing in actions at law commenced on writs issued out of Massachusetts courts. There is, however, a noteworthy difference in the case of Aberman Realty Building Corp. v. Joseph A. Smith, Civil No. 72–2516–F, where the plaintiffs have requested that Mass.Gen.Laws ch. 223, §§ 42, 62–70 be declared unconstitutional, thus adding sections 67–70 to this controversy. The complaint in *Aberman* presents no controversy relating to attachment of fraudulently conveyed realty (see sections 67 and 68), or to an attachment in an action commenced in the courts of the United States (see section 69), or to the levy of an execution on attached encumbered realty (see section 70). In view of our disposition of the cases we see no need to pass upon the constitutionality of the additional sections.

## II

When the cases came on for oral argument, it was found that the Massachusetts Attorney General had not been given any notice of hearing on the issue of the constitutionality of the statutes involved. Accordingly, the cases were set down for a further hearing on that issue, with notice to the Attorney General.

We also invited the parties to address us at the further hearing as to the feasibility of certifying to the Supreme Judicial Court under Rule 3:21 of the General Rules of that court the question: Whether the Supreme Judicial Court would construe Mass.Gen.Laws ch. 223, §§ 42, 62–66, as impliedly calling for no-

tice and hearing in accordance with the elements inherent in due process? We were disposed to this course because the Supreme Judicial Court had construed certain other Massachusetts statutes, facially devoid of express provisions for notice and hearing, as impliedly calling for these inherent due process requirements, *see* Rohrer, Petitioner, 353 Mass. 282, 230 N.E.2d 915 (1967); O'Leary, Petitioner, 325 Mass. 179, 89 N.E.2d 769 (1950), and because a federal court might well abstain if it determines that a state statute has been or can be clarified by that State's courts. *See, e. g.,* Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); Meridian v. Southern Bell T. & T. Co., 358 U.S. 639, 640, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959); *see generally* 1A J. Moore, Federal Practice ¶ 0.203, at 2101 (2d ed. 1965, Supp.1972). The principle underlying our invitation finds support in the certification procedure approved in Clay v. Sun Insurance Office, 363 U.S. 207, 212, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960), and the discussion by Mr. Justice Douglas of the "certificate route" in his concurrence in England v. Medical Examiners, 375 U.S. 411, 433–434, 84 S. Ct. 461, 11 L.Ed.2d 440 (1964). *See also* United Services Life Insurance Co. v. Delaney, 328 F.2d 483 (5th Cir. 1964) (Tuttle, C. J. dissenting), cert. denied sub nom. Paul Revere Life Insurance Co. v. First National Bank in Dallas, 377 U. S. 935, 84 S.Ct. 1335, 12 L.Ed.2d 298 (1964); Lillich & Mundy, Federal Court Certification of Doubtful State Law Questions, 18 U.C.L.A.L.Rev. 888 (1971); C. Wright, Federal Courts, § 52 at 204 (2d ed. 1970). Where the certification procedure is not available, the Court may be less inclined to require

---

2. Parties in the following cases have submitted *amici* papers to the court for its consideration: Aberman Realty v. Smith, Civil No. 72–2516–F; Baghdady v. Data Realty, Civil No. 72–3363–F. In addition, a brief *amicus curiae* of the Massachusetts Members Association of the First District of the Commercial Law League was submitted supporting the constitutionality of the challenged statutes, and a brief for *amici curiae* Stanley G. Welsh and Marjorie W. Whittemore (as co-partners d/b/a Highfield Associates) was filed asserting the unconstitutionality of the challenged statutes. The latter individuals are also plaintiffs in a similar pending action Stanley G. Welsh et al. v. Richard L. Kinchla Real Estate Inc., Civil No. 73–551–C. The statutes involved are Mass.Gen.Laws ch. 223, §§ 42, 62–66.

federal courts to stay their hands. *See* Lindsey v. Normet, 405 U.S. 56, 83, 92 S.Ct. 862, 31 L.Ed.2d 36 (1971) (opinion of Douglas, J.) ; Wisconsin v. Constantineau, 400 U.S. 433, 443, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) (Black, J., dissenting).

■ At the subsequent hearing the Massachusetts Assistant Attorney General stated that he did not wish to be heard on the issue of constitutionality, and requested merely that the question be certified to the Supreme Judicial Court. In their briefs and in oral argument certain of the parties opposed use of the certification procedure. It was there brought to our attention that petitions have been presented to the Supreme Judicial Court seeking to conform the Massachusetts attachment procedures to the decisions in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L. Ed.2d 556 (1972) and Schneider v. Margossian, 349 F.Supp. 741 (D.C.Mass. 1972).[3] It thus appears that that court has the opportunity to consider in general constitutional issues relating to attachment procedures. We have examined the attendant circumstances in the cases before us in considering whether to certify. In so doing we have been mindful of the considerations which support the wisdom of such course, among others, "the desirability of avoiding unseemly conflict between two sovereignties, the unnecessary impairment of state functions, and the premature determination of constitutional questions". Martin v. Creasy, 360 U.S. 219, 224, 79 S.Ct. 1034, 1037, 3 L.Ed.2d 1186 (1959). We have not been persuaded, however, that the sole constitutional issue presented to us is so entangled in state law as to threaten prospects of serious disruption of state functions, should the statutes be declared unconstitutional or injunctive relief be awarded. While these cases may present the first attack upon the alleged constitutional deficiency of chapter 223, sections 42, 62–66, our determination of whether the attack is valid cannot in the light of Schneider v. Margossian, *supra*, and what has followed, be viewed as premature. Finally, the desirability of prompt adjudication and the primacy of federal courts in deciding questions of federal law must be weighed against the possible consequences of conflict between the state and federal governments. With due regard for the importance of federal-state relations, we view the possibilities of unseemly conflict in the circumstances of these cases as remote indeed. We therefore determine not to certify the question.

### III

The statutory scheme challenged in these cases provides, *inter alia*, that "[a]ll real . . . property liable to be taken on execution . . . may be attached upon the original writ in any action in which debt or damages are recoverable, and may be held as security to satisfy such judgment as the plaintiff may recover . . . ." Mass.Gen. Laws ch. 223, § 42. The attachment is not "valid against a subsequent attaching creditor, or against a subsequent purchaser in good faith and for value, unless the officer deposits a certified copy of the original writ . . . in the registry of deeds for the county or district where the land lies", section 63. The officer who makes the attachment deposits the copy in the registry of deeds, section 64, and the register of deeds properly receives and records the attachment, section 65. The attachment takes effect as of the time it is made, if deposited in the registry of deeds within three days thereof, otherwise it takes effect as of the time it is deposited, section 66. The attachment may be reduced or discharged by the court when the writ is returnable on the application of the defendant, or the owner of the

---

3. While we are not familar with the form of the petitions, or of the specific relief requested, we recognize that the Massachusetts Supreme Judicial Court has been invested with rule-making power which would allow it "to adapt [writs] to changes in the law". Mass.Gen.Laws ch. 223, § 16.

property, if the attachment is excessive or unreasonable, section 114. It may also be dissolved by operation of law, sections 115, 115A, 116; by the defendant giving bond or other security, sections 120–125, 128, 129; or by the appointment of a receiver by a Massachusetts court, section 130.

Thus under the Massachusetts statutory attachment provisions a real estate attachment takes effect without notice to the owner of the property, and may be thereafter lifted by being reduced, discharged or dissolved only by the happening of an event subsequent to the time it takes effect.

■ In resolving the question whether these attachment procedures conform to the due process requirements of the Fourteenth Amendment, we first consider whether they fall within the scope of recent decisions of the Supreme Court and other federal courts invalidating certain prejudgment remedies, e. g., Fuentes v. Shevin, *supra*; Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Schneider v. Margossian, *supra*; McClellan v. Commercial Credit Corp., 350 F.Supp. 1013 (D.C.R.I.1972). This consideration, in turn, depends largely on whether an attachment of real estate is a "deprivation of property" within the meaning given to the phrase in *Fuentes*. Even if these questions should be answered in the affirmative, it remains to be determined whether there is such a compelling societal or governmental interest in the Massachusetts attachment procedures that they should be found valid, at least under certain circumstances, *Fuentes, supra*, 407 U.S. at 91, 92 S.Ct. 1983.

### A

Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) made clear that the due process clause of the Fourteenth Amendment requires that before one is deprived of any significant property interest he must be given an opportunity for a hearing at a meaningful time and in a meaningful manner to defend against the deprivation. Sniadach v. Family Finance Corp, *supra,* appeared to suggest, however, that the due process right to notice and hearing was narrowly limited to certain property, for example, necessaries. But the decision of the Court in Fuentes v. Shevin, *supra,* removed all doubt on that score, and established the principle that the protection of the Fourteenth Amendment does not depend on the nature of the property interest subject to deprivation and does apply to "any significant property interest". A three-judge court in this District recently followed that principle in holding facially unconstitutional the Massachusetts statutory procedures permitting prejudgment attachment of personal property by trustee process without notice of hearing. Schneider v. Margossian, *supra.* The three-judge court pointed out that

> trustee process may work a substantial hardship on defendants by, as here for example, freezing their bank accounts and forcing them to borrow money in order to live. Not all trustee process actions may have this result, *but what is important is that the statutes are not drafted to preclude this possibility. It is thus beyond dispute that trustee process puts restrictions on a defendant's use of his property.* (Emphasis supplied.)

349 F.Supp. at 745.

Attachment of real estate does not effect such an obvious deprivation of the property to the owner as does the action of replevin, where, as is shown in *Fuentes*, the officer takes custody of the personal property and holds it *pendente lite.* Nor does the real estate attachment work a deprivation to the owner of all use of the real estate as in the case of personal property held, as pointed out in *Schneider*, subject to the trustee process. Thus the owner may continue to enjoy the physical use of his real estate free from any restriction or control imposed by the attachment. Nevertheless, even viewing the attachment as a non-

possessory lien (Cohen v. Wasserman, 238 F.2d 683 (1st Cir. 1956)), or as merely an encumbrance or cloud on the title (N.Y.N.H. & H. R. R. v. Butter, 276 Mass. 236, 176 N.E. 797 (1931)), the interest created by the attachment operates as a superior interest against subsequent purchasers, mortgagees or attaching creditors, and thus restricts the owner's ability to sell or mortgage the property at its full value. The determinative impact of the attachment is that it deprives the owner of a property right or interest significant not only to him in his use of the property but to the attaching party as well. The nature of such deprivation has been recognized even by earlier courts which refused to sustain a constitutional challenge to prejudgment attachments. Thus in McInnes v. McKay, 127 Me. 110, 141 A. 699, aff'd, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1929) the court said:

> Deprivation does not require actual physical taking of the property or the thing itself. It takes place when the free use and enjoyment of the thing or the power to dispose of it at will is affected.

127 Me. at 116, 141 A. at 702. Similarly, the unrestricted use of property has been recognized as an interest or right which may be protected even from temporary deprivation. See, e. g., Seattle Trust Co. v. Roberge, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928); United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946); Griggs v. Allegheny County, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962). Further support for the view that limitation on the free use of property works as a deprivation of it to the owner may be found in the recent decision in Idaho First National Bank v. Kenneth Erickson, No. 26844 (D.C.Idaho, Feb. 27, 1973), where the court quashed a writ of prejudgment attachment on the ground that Idaho statutes were no longer constitutional

after *Fuentes*. Without extensive discussion the court noted that although the deprivation may have been only temporary and not final, the deprivation was nonetheless within the Fourteenth Amendment. More significantly, two separate three-judge courts in this Circuit have for the same reasons recently declared unconstitutional statutory schemes in Maine and New Hampshire [4] similar to that here attacked. Gunter v. Merchants Warren National Bank et al., 360 F.Supp. 1085 (D.C.Me.1973) and its companion case, Lake Arrowhead Estates, Inc. et al v. Russell P. Cumming et al, Civil No. 14–20; Clement v. Four North State Street Corp. et al, 360 F. Supp. 933 (D.C.N.H.1973).

■ In defending against the constitutional challenge to the attachment procedures, certain parties here have placed reliance on the decision of the United States District Court for the District of Connecticut in Black Watch Farms, Inc. v. Dick, 323 F.Supp. 100 (D.C.Conn. 1971), where the court held constitutional Connecticut real estate attachment statutes similar in almost every respect to the Massachusetts statutes. However, that decision was rendered prior to *Fuentes*, and relied, in part, on the narrow reading of Sniadach v. Family Finance Corp., *supra*. *Black Watch* also relied, in part, on McInnes v. McKay, *supra*, which, as a precedent, is of doubtful value. See *Fuentes*, *supra*, at n. 2. The gist of the court's finding in *Black Watch* was that the owner's use or enjoyment of the real estate was not affected, nor was the owner's livelihood threatened, by deprivation of his right to freely transfer the real estate. In our view, however, the very deprivation recognized and defined by the court in *Black Watch* is significant enough to bring the instant cases within the doctrine of *Fuentes*. Since any need for a showing of hardship has been obviated by *Fuentes*, we regard *Black Watch* as

---

4. The Maine procedures found unconstitutional are set forth at Chapter 507 of Title 14 of the Maine Revised Statutes Annotated (14 M.R.S.A. § 4451 et seq.) and Rule 4A of the Maine Rules of Civil Procedure. The New Hampshire procedure is set forth at Chapter 511 of the New Hampshire Revised Statutes Annotated.

not a controlling precedent for the cases before us. We therefore conclude that the Massachusetts attachment procedures applicable to real estate, when invoked, do effect deprivation of a significant property interest of the owner without notice or opportunity to be heard.

**B**

We consider now whether the statutory procedures serve only those extraordinary situations that justify postponing notice and hearing, Boddie v. Connecticut, *supra.* The Court in *Fuentes* specified elements which, when found together, may demonstrate the existence of such an extraordinary situation. Thus the Court said:

> Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

407 U.S. at 90–91, 92 S.Ct. at 1999 (footnote omitted).

Neither the cases before us, nor the statutory scheme permitting the attachments, reveal any important or significant governmental or societal interest served by the statutes. Moreover, the attachments were not made to acquire quasi in rem jurisdiction, because the Massachusetts courts had in personam jurisdiction over the parties whose real estate was attached. *Compare* McInnes v. McKay, *supra.* *See also* Note, Quasi in Rem Jurisdiction and Due Process Requirements, 82 Yale L.J. 1023 (1973). Accordingly, the real estate attachment procedures set forth in chapter 223, sections 42, 62–66, are facially constitutionally defective under the due process clause of the Fourteenth Amendment, and as a result must fall.

**IV**

The plaintiffs are entitled to relief declaring that the statutory attachment procedures violate the due process clause, and to injunctive relief against defendants from enforcing such procedures. Injunctive relief is also sought against the defendant Hannon, the Register of Deeds for the County of Norfolk, and we consider his role in the procedure in determining whether such relief shall issue as to him. It is Hannon's contention, *inter alia,* that, although he acts pursuant to a statute of state-wide application, he is not a state official within the purview of 28 U.S.C. § 2281, and that therefore it would not be appropriate to grant injunctive relief against him. He argues further that there is in fact no necessity for such relief against him, and that to grant an injunction in the form requested would fail to have effect in any counties other than Norfolk and would create new duties for him.[5] We reject these contentions.

The Registers of Deeds in Massachusetts are chosen by the electors of the respective registry districts, usually a county. Mass.Gen.Laws ch. 36, §§ 1, 2. It is manifest that the statutes involved in these cases, viz., chapter 223, sections 42, 62–66, establish a state-wide policy, and not a policy merely in the interest of Norfolk County. Although the de-

5. The latter argument is foreclosed by the decision in Mayers v. Ridley, 465 F.2d 630 (D.C.Cir. 1972), as is the argument that the Register of Deeds is acting in a purely ministerial capacity. The Court of Appeals for the District of Columbia, *en banc,* held in *Mayers* that the District of Columbia Recorder of Deeds could be enjoined from accepting for filing instruments which contain racially restrictive covenants unless a notice was affixed stating that restrictive covenants found therein were null and void.

fendant Hannon was chosen in a political subdivision of the Commonwealth and acts within that limited territory, it is our view that he is nevertheless charged under section 65 with the duty of enforcing the statutory attachment procedures in the interest of the Commonwealth and not simply in the interest of the locality where he serves. Thus, in the performance of his duties in that enforcement, he is acting as a state officer. *Cf.* Spielman Motor Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L. Ed. 1322 (1935); Ortiz v. Colon, 475 F. 2d 135 (1st Cir. 1973). A contrary conclusion is not dictated by Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967) or Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967) relied upon by the defendant Hannon, since both of these cases involved local regulatory measures, not statutes of state-wide applicability. Further, we do not assume that because Hannon is the only Register of Deeds now before the court that our decision will have no effect in other registry districts within the Commonwealth. Like the court in Schneider v. Margossian, *supra,* we are not overly concerned by the prospect of other Registers of Deeds proceeding to perform their duties in disregard of this decision and declaration. Since the other arguments of the defendant Hannon appear to us to be lacking in substance, they are not referred to. We therefore conclude that the plaintiffs are entitled to the injunctive relief sought.

## V

■ Following the lead of Schneider v. Margossian, *supra,* and Gunter v. Merchants Warren National Bank et al., *supra,* we limit the effect of the judgment ordered today (1) to the parties in the cases at bar, including parties in cases not heard orally but who have participated as *amici curiae* in the proceedings before the court,[6] and (2) to the enforcement of chapter 223, sections 42, 62–66 which are similarly constitutionally challenged in cases now pending before the district judges in this District, and (3) to the prospective enforcement of chapter 223, sections 42, 62–66 insofar as these sections deny parties notice and opportunity to be heard prior to the making of attachments of their real estate, from the time of the filing of the order entered herewith. This course is taken to avoid uncertainty and doubt that a retrospective judgment would cast upon the validity of all attachments of real estate made in civil actions now pending in the Massachusetts courts.[7]

Finally, the cases at bar and those cases wherein parties have participated in these proceedings as *amici curiae* are remanded to the respective judges to whom the cases were assigned upon the filing thereof, for consideration of any remaining issues.

## APPENDIX

Mass.Gen.Laws ch. 223: *Attachment of Property*

§ 42. *Property subject to attachment.* All real and personal property liable to be taken on execution, except such personal property as, from its nature or situation, has been considered as exempt according to the principles of the common law as adopted and practiced in the commonwealth, and except as provided in the four following sections, may be attached upon the original writ in any action in which debt or damages are recoverable, and may be held as security to satisfy such judgment as the plaintiff may recover; but no attachment of land

---

6. See *supra* note 2 (except the Commercial Law League, which is a non-party *amicus curiae*).

7. We note that another case in this District, Higley Hill, Inc. v. Knight, 360 F.Supp. 203, (D.C.Mass., 1973), declined to apply *Fuentes* retroactively to attachments made before June 12, 1972, the date *Fuentes* was decided. We declined to take such a narrow approach for the reasons set forth in Gunter v. Merchants Warren National Bank et al., *supra* at n. 17. *Compare* Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) *with* Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

shall be made on a writ returnable before a district court unless the debt or damages demanded therein exceed twenty dollars.

\* \* \* \* \* \*

§ 62. *General provisions.* In attaching land, or a right or interest therein, the officer need not enter upon the land or be within view of it. In attaching leasehold estates, the officer shall state in his return in general terms the leasehold property attached. Every original writ on which such an attachment of land, or a right or interest therein, is made shall contain or have endorsed upon it the name and last known residence of each defendant.

§ 63. *Copy of writ; deposit in registry of deeds.* No attachment on mesne process of land or of any leasehold estate shall be valid against a subsequent attaching creditor, or against a subsequent purchaser in good faith and for value, unless the officer deposits a certified copy of the original writ, without the declaration, and so much of his return thereon as relates to the attachment of the estate, in the registry of deeds for the county or district where the land lies.

§ 64. *Attaching officer; duty.* The officer who makes such attachment shall deposit such copy in the registry of deeds.

§ 65. *Register; duty; fees.* The register of deeds shall note on such copy the day, hour and minute of its receipt, and shall record it in his office. He shall also enter in the indexes provided for in chapter thirty-six the name or names of each defendant whose land is attached as appears in said copy, the name of the plaintiff, the time when the attachment was made, the time the copy was recorded, the court where the same is returnable, the return date, and the name of the attorney for the plaintiff. The recording fees may be taxed as a part of the plaintiff's costs.

§ 66. *Attachment; time of taking effect.* If the copy of the writ is deposited, as aforesaid, within three days after the day when the attachment was made the attachment shall take effect from the time it was made, otherwise, from the time when the copy is so deposited; but attachments of land, and of leasehold estates which have an original term of more than seven years, shall in no case be valid against purchasers in good faith and for value, other than parties defendant, before the time when the copy is deposited as aforesaid, and no attachment shall be valid against such purchasers as to any particular parcel of land, or as to any particular leasehold estate as aforesaid, in any case where the name of the owner thereof under which he acquired title thereto as appears on the public records is not included in the writ unless the writ is seasonably amended to include such name and then only from the time when a correspondingly amended copy is deposited as aforesaid.