HECTOR McINNES, ET AL *vs.* JAMES A. McKAY.

Cumberland. Opinion April 11, 1928.

*Sidney St. F. Thaxter,*
*Carl W. Smith,* for plaintiffs.
*Bradley, Linnell & Jones,*
*Locke, Perkins & Williamson,* for defendant.

**112**

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, BASSETT, JJ.

BASSETT, J. Action on the case to recover $969.50 for alleged services and disbursements and interest from agreed date of demand. The defendant appeared specially to object to the jurisdiction of the court and filed a plea and motion that the writ and summons be declared null and void. The evidence, presented in support of the plea and motion, was an agreed statement of facts. The presiding justice overruled the plea and motion and the defendant seasonably excepted. The case comes up on the exceptions and agreed statement.

The plea and motion raised this single issue of law that the statutes of this state providing for attachment are unconstitutional and void because they deprive the defendant of property without due process of law as guaranteed by the Fourteenth Amendment of the Federal Constitution.

The procedure in this case in all its details from the purchase of the blank writ in the office of the Clerk of Cumberland County Superior Court to the entry of the writ in court on the return day is set out in the agreed statement. The attorneys of the plaintiff filled out the writ in the usual way, attached by a duly authorized officer all the defendant's real estate in Washington County, a few days later attached all the defendant's share interest in a corporation, served the defendant with summons in usual form and within the required time and entered the writ in court on the return day.

The value of the real estate and stock attached was admittedly many times in excess of the amount of the ad damnum of the writ, but no question is raised that the attachment was excessive and illegal.

The one issue is the unconstitutionality of the attachment statute, the defendant contending that an attachment deprives an owner of many rights comprised in the term "property" and that the statutes of Maine authorize general attachment without first filing an affidavit of the cause of the attachment or setting out prima facie proof of good faith and giving bond or security, which are necessarily reasonable requirements to protect the defendant;

that the statues of practically all the states excepting Massachu-setts, New Hampshire, Connecticut and Maine require both affi-davit and bond, a very few one or the other; that the statutes of the four named states, which are the same as Maine, permit at-tachment without affidavit or security and thereby go to an ex-treme never contemplated by the framers of the Constitution; that such general attachment, in advance of judgment, it being in es-sence a judgment in advance, is depriving the defendant of prop-erty without due process of law.

To determine the answer to these contentions, we will first ex-amine what is the foundation of the practice and procedure of at-taching the property of a defendant and holding it to satisfy a judgment which the plaintiff may recover, when, perhaps, judg-ment may be for the defendant.

It rests solely on statute, *Bradford* v. *McLellan*, 23 Me., 302. It is given expressly by our statutes. Rev. Statutes, Chap. 86, Sec. 2 provides "All civil actions, except scire facias and other special writs shall be commenced by original writs; which, in the Supreme Judicial Court, may be issued by the clerk in term time or vacation, and framed to attach the goods and estate of the defendant, and for want thereof to take the body, or as an original summons, without an order to attach goods and estate." Other sections follow providing for attaching personal property or real estate and Section 69 provides that such attachment shall con-tinue for thirty days and no longer after final judgment in the original suit with certain exceptions.

The statutes since the first revision in 1840 have expressly pro-vided for the commencement of civil actions by original writs thus framed and for the continuation of attachment for thirty days after judgment.

Between 1820, when Maine separated from Massachusetts and became a sovereign state, and 1840, our statutes were "but re-enactments of those contained in the Statute (Massachusetts) of 1784 and their construction should be received," *Maine Charity School* v. *Dinsmore*, 20 Me., 278, reënacted by our first Legisla-ture in 1821, Laws of Maine 1821-1834, Chapters 59 and 60, pages 328, 383.

The Massachusetts Statutes of 1784 with intervening acts were

published in 1801 and 1807 and were "the statutes now in force" when in *Bond* v. *Ward*, 7 Mass., 128 (1810), Chief Justice Parsons said "The practice of attaching the effects of a defendant and holding them to satisfy a judgment which the plaintiff may recover when perhaps judgment may be for the defendant is unknown at the common law and is founded on our statute law explained by a usage founded on the ordinances in force under the colonial charter." For some time under that charter attachment was, as it was at common law, merely a distress, a seizing of his chattels, to compel the defendant to appear when he did not appear on summons and answer, his chattels being restored to him when he appeared and forfeited when he did not. But Colonial Ordinances (Colonial Laws of Mass. Reprinted from Edition of 1660, page 124) provided that a plaintiff could take out either a summons or attachment against the defendant and, (page 144) since, if the goods were released on appearance, the plaintiff, recovering judgment, might not find them to seize on execution, that the attachment should remain until judgment was satisfied, provided the execution was sued out and satisfied in thirty days after judgment. This practice was sanctioned by the provincial Act of 13 Will. 3 C. 11 (1701). Although there was no express provision that an attachment could go before summons, it became under the ordinances and the statute established usage and procedure and was, as the Chief Justice said, "now law by the statutes in force."

The usage and practice therefore of instituting suit by either attachment without affidavit or bond or by summons and, if by attachment, one that remained until satisfaction of judgment if execution were taken out within thirty days of judgment, had become fully established in Massachusetts, part of which Maine was at the time of the adoption of the Federal Constitution.

All acts of the Legislature are presumed to be constitutional and it is a presumption of great strength. "That a statute, or rule of law, or custom, has so long existed unquestioned, and has been so often invoked and universally approved, and has become ingrained like this in the jurisprudence of a state, is a strong, if not conclusive reason, for pronouncing it constitutional and a

part of the 'law of the land.' " *Eames* v. *Savage,* 77 Me., 212, 216, 218.

We do not find that the constitutionality of these statutes of Massachusetts and Maine have been once questioned during all these years in the courts of either state. This case is the first to suggest their unconstitutionality. If there had been doubt it would certainly have been raised before this. All doubt ought now to be considered at rest. *State* v. *Simpson,* 78 Vt., 124; 62 Atl., 14.

But we think it is clear that the attachment statute does not deprive the defendant of property without due process of law.

An attachment creates a lien upon the estate which may be made available to the creditor after judgment by a levy of the execution thereon. *Bachelder* v. *Perley,* 53 Me., 415. Its purpose is simply to secure to the creditor the property which the debtor has at the time it is made so that it may be seized and levied upon in satisfaction of the debt after judgment and execution may be obtained. *Crocker* v. *Pierce,* 31 Me., 183. It is not an absolute right. *Bowley* v. *Bowley,* 41 Me., 545. It does not destroy title or the right to sell. Until a sale on execution, the debtor has full power to sell or dispose of the property attached without disturbing the possession (in case of personalty) or rights acquired by the attachment. *Richardson* v. *Kimball,* 28 Me., 474.

An attachment is a part of the remedy provided for the collection of the debt. *Bangor* v. *Goding,* 35 Me., 73. And it is so held in Oregon, where a summons must issue before or at the time of the issuance of the writ of attachment, which is issued, when plaintiff has no security, upon affidavit and bond. "An attachment in this state as elsewhere is regarded as a quasi proceeding in rem and is known under the statute as a 'provisional remedy' the purpose of which is to acquire a lien upon the property of the debtor, temporary in its nature, to await the final judgment of the court touching the action, in connection with which the proceeding is brought into requisition. The court is empowered through the allowance of a provisional remedy thereafter to take whatever action may seem necessary to the acquirement, preservation and perfection of the lien. The proceeding is simply auxiliary to the main case." *White* v. *Johnson,* 40 Pac., 514 (Ore.).

So too in Indiana, where affidavit and bond is required. In

*Flourney* v. *Jeffersonville,* 79 Am. Dec., 472, the court held that the taking possession of property before the right to it has been judicially determined in cases of attachment and replevin is a "ministerial act" and is a matter in the discretion of the legislative power in creating remedies.

To what actions the remedy of attachment may be given is for the legislature of a state to determine and its courts to decide. *Rothschild* v. *Knight,* 184 U. S., 334, 341; 46 Law. Ed., 573. "Until the lien is perfected by levying execution, until that is done the remedy by attachment is in the control of the legislature which created and might lawfully modify or abrogate it according to their discretion." *Poor* v. *Larrabee,* 58 Me., 555.

The defendant contends that the attachment deprived him of his property. Property in legal conception is the total of the rights and powers incident to a thing rather than the thing itself. The legal right to use and derive a profit from land or other things is property. *Inhabitants of York Village Corp.* v. *Libby,* 140 Atl., 382, 385 (Me.). And the power of disposition at the will of the owner is property. Deprivation does not require actual physical taking of the property or the thing itself. It takes place when the free use and enjoyment of the thing or the power to dispose of it at will are affected.

But, although an attachment may, within the broad meaning of the preceding definition, deprive one of property, yet conditional and temporary as it is, and part of the legal remedy and procedure by which the property of a debtor may be taken in satisfaction of the debt, if judgment be recovered, we do not think it is the deprivation of property contemplated by the Constitution. And if it be, it is not a deprivation without "due process of law" for it is a part of a process, which during its proceeding gives notice and opportunity for hearing and judgment of some judicial or other authorized tribunal. The requirements of "due process of law" and "law of the land" are satisfied. *Bennett* v. *Davis,* 90 Me., 105; *Randall* v. *Patch,* 118 Me., 303; *Inhabitants of York Village Corporation* v. *Libby,* supra; 6 R. C. L., Sec. 447, page 451.

In *Rothschild* v. *Knight,* supra, it was held that, the situs of a debt being the residence of a debtor, attachment of a debt due to a non-resident creditor at the place where the debtor resides

in accordance with the law of that state did not deprive the debtor of property without due process of law.

The ruling of the presiding justice was correct. The mandate must therefore be

*Exceptions overruled.*