**Richard GUZMAN and Mary Ann Guzman, Plaintiffs,**

v.

**The WESTERN STATE BANK OF DEVILS LAKE, NORTH DAKOTA, a North Dakota corporation, et al., Defendants.**

**Civ. No. 4826.**

United States District Court, D. North Dakota, Northeastern Division.

Sept. 25, 1974.

Michael O. McGuire, Schuster, Ramlo & McGuire, Fargo, N. D., David R. Bossart, Conmy, Feste & Bossart, Fargo, N. D., for plaintiffs.

John C. Haugland, Duffy & Haugland, Devils Lake, N. D., Kermit Edward Bye, Vogel, Vogel, Brantner & Kelly, Fargo, N. D., for defendants.

## MEMORANDUM OPINION

BENSON, Chief Judge.

In this action, plaintiffs, pursuant to 28 U.S.C. § 1331(a), § 2201, and § 2202, are challenging the constitutionality of Chapter 32–08 North Dakota Century Code (NDCC), and pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and § 1343(4) are seeking redress from the defendants. Defendants have moved under Rule 56, Federal Rules of Civil Procedure, for summary judgment of dismissal.

There are certain unresolved issues of fact in the case relating to plaintiffs' allegations of abuse of legal process, bad faith, invasion of privacy, negligence, breach of warranty and damages, all of which are properly issues to be resolved in an action pending in the State Court. For the purpose of consideration of defendants' motions in this Court, there are no genuine issues as to any material fact.

The plaintiffs entered into a retail installment contract and security agreement with Defendant William Johnson, doing business as Bill's Mobile Homes, Devils Lake, North Dakota, on September 14, 1970, for the purchase of a 1970 Medallion Mobile Home. Under the

agreement, Johnson and subsequent assignees retained title. Johnson assigned the retail contract and security agreement executed by the plaintiffs to defendant, The Western State Bank of Devils Lake, North Dakota (Western), which took it with recourse. On the same date, a second security agreement was taken by Western from plaintiffs covering the mobile home and a 1969 Chevrolet automobile, apparently securing some interest which Western had in the automobile. The plaintiffs resided in the mobile home, which remained mounted on its wheels with siding attached.

Plaintiffs became delinquent on their payments.[1] Western proceeded against the plaintiffs through an attachment action pursuant to Chapter 32–08 NDCC.[2] The action was filed in District Court, State of North Dakota, Second Judicial District, Rolette County, North Dakota, and has not been tried.

As required by law, a verified complaint, an affidavit setting forth the grounds for attachment, and a bond, were filed with the clerk of court who thereupon issued a warrant of attachment under the seal of the court and attested in the name of a judge of the court. The warrant was delivered to Defendant LeRoy Ouellette, Sheriff of Rolette County, for execution. *See* § 32–08–05, § 32–08–01, subd. 8, § 32–08–06, § 32–08–04, and § 32–08–08 NDCC.

The Sheriff executed the warrant by seizing the mobile home and automobile, which was the procedure provided by law.[3] Plaintiffs then commenced an action in federal court, alleging that in authorizing seizure without prior notice and hearing, Chapter 32–08 NDCC violated the Fourteenth Amendment requirements of due process. Plaintiffs rely principally on Sniadach v. Family Finance Corporation, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). However, defendants have based their motion on Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).[4] This Court has concluded that the North Dakota attachment statutes give the debtor the same constitutional protections which the Supreme Court found under the laws of Louisiana in *Mitchell,* and on the 17th day of September, 1974, entered its Order dismissing plaintiffs' federal claims.

In *Mitchell,* the creditor had filed a suit against the debtor alleging the sale of a refrigerator, range, stereo and washing machine through an installment sales contract. Payment was in arrears and the creditor alleged that it had a vendor's lien on the goods. The complaint was accompanied by an affidavit from the creditor's credit manager attesting to the truth of the facts alleged. The creditor also asserted that it had

---

1. Plaintiffs claimed the delinquency was due to "tremendous fuel bills" incurred in heating the mobile home which resulted from defects in the home. Defendants alleged waste and impairment of their security interest.

2. The security agreement provided the following remedy:
"Remedies. Whenever a default shall be existing, all Obligations, including any note executed in connection herewith, shall become immediately due and payable, at the option of Secured Party, without notice or demand, and Secured Party shall have and may exercise the rights and remedies accorded upon default to a secured party, under the Uniform Commercial Code together with all other rights and remedies accorded Secured Party by this agreement or by law. Upon Secured Party's demand, Buyer agrees to as-

semble, at Buyer's expense, the Property at a place reasonably convenient to both parties. If the Property is disposed of pursuant to U.C.C. § 9.504 Buyer specifically agrees to pay any deficiency. In all events, Buyer agrees to pay the reasonable expenses incurred by Secured Party in exercising its rights and remedies upon Buyer's default, including (to the extent permitted by law), but not limited to, reasonable attorney's fees and other legal expenses."

3. *See* § 32–08–10 NDCC.

4. Although this Court finds it unnecessary to consider the question in light of its holding herein, Defendant Sheriff Ouellette may have immunity. *See* Duba v. McIntyre et al., 501 F.2d 590, filed July 18, 1974 (8th Circuit).

reason to believe that the debtor would encumber, alienate or otherwise dispose of the merchandise during the pendency of the proceedings. Based on this petition and affidavit, and after posting of the required bond, the judge issued a writ of sequestration. Pursuant to the writ of sequestration, seizure was made and a summons was served. The issue was whether the seizure constituted a deprivation of property without due process of law. It was held that the issuance of the sequestration writ without notice and hearing did not violate procedural due process, as guaranteed by the Fourteenth Amendment, since the Louisiana system adequately protected the debtor's interest, and that where only property rights are involved, mere postponement of the judicial inquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.

> "[T]here is scant support in our cases for the proposition that there must be final judicial determination of the seller's entitlement before the buyer may be even temporarily deprived of possession of the purchased goods. On the contrary, it seems apparent that the seller with his own interest in the disputed merchandise would need to establish in any event only the probability that his case will succeed to warrant the bonded sequestration of the property pending outcome of the suit. Cf. Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Ewing v. Mytinger and Casselberry, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950). The issue at this stage of the proceeding concerns possession pending trial and turns on the existence of the debt, the lien, and

the delinquency. These are ordinarily uncomplicated matters that lend themselves to documentary proof; and we think it comports with due process to permit the initial seizure on sworn ex parte documents, followed by the early opportunity to put the creditor to his proof. The nature of the issues at stake minimize the risk that the writ will be wrongfully issued by a judge. The potential damage award available, if there is a successful motion to dissolve the writ, as well as the creditor's own interest in avoiding interrupting the transaction, also contribute to minimizing this risk." *Mitchell,* 416 U.S. at 609, 94 S.Ct. at 1901, 40 L. Ed.2d at 414, 415.

█ Plaintiffs direct their principal attack on the provision of the North Dakota statute which authorizes the clerk of court to issue a warrant of attachment. However, it is the view of this Court that the statute, in limiting the attachment remedy to nine specific grounds,[5] considered together with the requirement of strict compliance mandated by the North Dakota courts,[6] and the right provided by § 32–08–24 NDCC to immediately move the Court for discharge if the attachment was irregularly issued, fulfills the constitutional requirement of establishing probable cause before the warrant is issued.[7]

The situation is as described by Justice Stewart in his dissent in *Mitchell.*

> "Similarly, the fact that the official who signs the writ after the ex parte application is a judge instead of a court clerk is of no constitutional significance. . . . There is nothing to suggest that the nature of this duty was at all changed when the law was amended to vest it in a judge rather

5. Western proceeded under § 32–08–01(8) which provides for attachment "in an action to recover purchase money for personal property sold to the defendant, an attachment may be issued and levied upon such property."

6. Renner v. Gruman Steel Co., 147 N.W.2d 663 (N.D.1967); Dickinson v. First Nat. Bank, 64 N.D. 273, 252 N.W. 54 (1933);

Birchall v. Griggs, 4 N.D. 305, 60 N.W. 842 (1894).

7. §§ 32–08–18 and 32–08–19 provide a procedure through which the debtor may obtain a discharge from the clerk, by filing a bond, but § 32–08–24 gives a debtor immediate access to the judge to move for discharge without a bond on an allegation that the attachment was irregularly issued.

than a clerk in this one parish. Indeed, the official comments declare that this statutory revision was intended to 'mak[e] no change in the law.' Whether the issuing functionary be a judge or a court clerk, he can in any event do no more than ascertain the formal sufficiency of the plaintiff's allegations, after which the issuance of the summary writ becomes a simple ministerial act." 416 U.S. at 632, 94 S.Ct. at 1912, 40 L.Ed.2d at 428.

■ However, the fact that the issuance of the warrant of attachment by a clerk or a judge after a showing of probable cause is a ministerial act is not a constitutional deficiency " . . . if the opportunity given for ultimate judicial determination of liability is adequate." *Mitchell*, 416 U.S. at 611, 94 S. Ct. at 1903, 40 L.Ed.2d at 416, quoting Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 596–597, 51 S.Ct. 608, 75 L.Ed. 1289 (1931).

"More precisely in point, the Court had unanimously approved prejudgment attachment liens effected by creditors, without notice, hearing or judicial order, saying that 'nothing is more common than to allow parties alleging themselves to be creditors to establish in advance by attachment a lien dependent for its affect upon the result of the suit.' 'The fact that the execution is issued in the first instance by an agent of the State, but not from a Court, followed as it is by personal notice and a right to take the case into court, is a familiar method in Georgia and is open to no objection.' Coffin Brothers v. Bennett, 277 U.S. 29, 31, 48 S.Ct. 422, 423, 72 L.Ed. 768 (1928). To the same effect was the earlier case of Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837, 17 A.L.R. 873 (1921). Furthermore, based on Ownbey and Coffin, the Court later sustained the constitutionality of the Maine attachment statute. McKay v. McInnes, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1928). In that case, a nonresident of Maine sued in the Maine courts to collect a debt from a resident of the State. As permitted by statute, and as an integral part of instituting the suit, the creditor attached the properties of the defendant, without notice and without judicial process of any kind. In sustaining the procedure, the Maine Supreme Court, 127 Me. 110, 141 A. 699 (1928), described the attachment as designed to create a lien for the creditor at the outset of the litigation. 'Its purpose is simply to secure to the creditor the property which the debtor has at the time it is made so that it may be seized and levied upon in satisfaction of the debt after judgment and execution may be obtained.' Id., at 115, 141 A. at 702. The attachment was deemed 'part of the remedy provided for the collection of the debt' and represented a practice that 'had become fully established in Massachusetts, part of which Maine was at the time of the adoption of the Federal Constitution.' Id., at 114, 115, 141 A. at 702. The judgment of the Maine court was affirmed without opinion citing Ownbey and Coffin." *Mitchell*, 416 U.S. at 613, 94 S.Ct. at 1903, 40 L.Ed.2d at 417.

The North Dakota system seeks to minimize the risk of error by a wrongful possession by the creditor. The procedure gives the same broad constitutional protection to the debtor as that provided by the Lousiana statute.

"The system protects the debtor's interest in every conceivable way, except allowing him to have the property to start with, and this is done in pursuit of what we deem an acceptable arrangement pendente lite to put the property in possession of the party who furnishes protection against loss or damage to the other pending trial on the merits." *Mitchell*, 416 U.S. at 618, 94 S.Ct. at 1905, 40 L.Ed.2d at 420.

As Mr. Justice White declared, it is impossible to accept the broad assertion of the debtor that the due process clause guarantees to him the "use and posses-

sion of the goods until all issues in the case [are] judicially resolved after full adversary proceedings [have] been completed." *Mitchell,* 416 U.S. at 607, 94 S. Ct. at 1900, 40 L.Ed.2d at 413. This Court is convinced that the North Dakota attachment statutes protect the constitutional rights of both the debtor and creditor.

Plaintiffs also suggest that, as applied in this case, the North Dakota attachment statutes are unconstitutional. This Court has concluded that the statutes are constitutional on their face. As previously noted in this memorandum, the North Dakota courts require strict adherence. If there was something less than strict adherence, it was due to the actions of the parties and not to a deficiency in the statutes. The remedy must remain with the State court.

■ The difficulty in this case arises from the fact that the personal property on which the warrant of attachment was levied was a mobile home which the plaintiffs were using as a residence. Plaintiffs point to what they term the "brutal impact" of the eviction which resulted from the seizure. The question of whether public policy should exempt such a mobile home from the "harsh" remedy of attachment is a legislative question to be resolved by the State. That such an eviction does create a hardship on the debtors cannot be challenged, but to be free from resultant hardships is not one of the rights guaranteed by the Constitution or laws of the United States. Justice Powell in his concurring opinion in *Mitchell* stated:

"In my view, the constitutional guarantee of procedural due process is fully satisfied in cases of this kind where state law requires, as a precondition to invoking the State's aid to sequester property of a defaulting debtor, that the creditor furnish adequate security and make a specific factual showing before a neutral officer or magistrate of probable cause to believe that he is entitled to the relief requested. An opportunity for an adversary hearing must then be accorded promptly after sequestration to determine the merits of the controversy, with the burden of proof on the creditor." *Mitchell,* 416 U.S. at 625, 94 S.Ct. at 1909, 40 L.Ed.2d at 424.

Under the North Dakota statute, the debtor may move for discharge and sustain his motion by affidavit, which effectively places the burden of proof on the creditor.[8]

■ Plaintiffs complain the North Dakota statutes provide no adequate remedy where an attachment is irregularly issued. They allege that the Sheriff failed to file an inventory, thus preventing the debtor from resorting to § 32–08–19 NDCC, which provides for the debtor to recover the seized property by filing a bond " . . . equal to the appraised value of the property attached according to the sheriff's inventory . . . ". Such failure renders the attachment void and the State courts will provide the remedy. *See* Renner v. J. Gruman Steel Company, 147 N.W.2d 663 (N.D.1967); Summerfield v. Paulson, 68 N.D. 161, 278 N.W. 248 (1938).

■ Plaintiffs argue that under § 32–08–06, the undertaking required of the creditor limits the damages to the amount of the claim specified in the warrant, which may be insufficient. In this case, it was a special warrant of attachment which was issued under § 32–08–26, which provides:

" . . . the plaintiff's undertaking shall be at least double the value of the specific property to be seized as stated in the plaintiff's affidavit . . . "

This Court can see no constitutional infirmity in that provision.

■ Plaintiffs allege that certain property in which the creditor had no interest was taken in the seizure. This obviously is not the result of an infirmity in the attachment statute, and any claim which plaintiffs may have for con-

8. *See* § 32–08–24 NDCC.

version may be pursued under § 32–03–23 NDCC. Plaintiffs also assert claims of malice, bad faith, breach of warranty, negligence and invasion of privacy. These claims must be pursued in State Court under the appropriate statutes. *See* Chapter 32–03 NDCC.

Plaintiffs have not sustained the burden of proving their allegation that Chapter 32–08 NDCC is unconstitutional and have shown no deprivation by the defendants of any right, privilege or immunity secured by the Constitution or any laws of the United States.

## APPENDIX

### CHAPTER 32–08 NORTH DAKOTA CENTURY CODE

32–08–01. *When property be attached.* —In an action or a contract or judgment for the recovery of money only, for the wrongful conversion of personal property, or for damages, whether arising out of contract or otherwise, the plaintiff, at or after the commencement thereof, may have the property of the defendant attached in the following cases:

1. When the defendant is not a resident of this state or is a foreign corporation;

2. When the defendant has absconded or concealed himself;

3. When the defendant has removed or is about to remove his property, or a material part thereof, from this state, not leaving enough therein for the payment of his debts;

4. When the defendant has sold, assigned or transferred, secreted, or otherwise disposed of, or is about to sell, assign, transfer, secrete, or otherwise dispose of his property, with intent to cheat or defraud his creditors, or to hinder or delay them in the collection of their debts;

5. When the defendant is about to remove his residence from the county where he resides with the intention of permanently changing the same, and fails or neglects on demand to give security for the debt upon which the action is commenced;

6. When the debt upon which the action is commenced was incurred for property obtained under false pretenses;

7. When the defendant is about to remove his property or a material part thereof from the state with the intent or to the effect of cheating or defrauding his creditors or hindering or delaying them in the collection of their debts;

8. In an action to recover purchase money for personal property sold to the defendant, an attachment may be issued and levied upon such property; and

9. In any action brought against the owner of any motor vehicle for damages alleged to have been caused by the negligence of such owner or his duly authorized agent, the motor vehicle alleged to have been driven, occupied, or owned by a negligent driver or owner thereof, at the time of such accident, may be attached.

32–08–02. *Attachment on claim before due.*—The plaintiff may bring an action on his claim before it is due and may have the property of the defendant attached in any of the cases mentioned in subsections 3, 4, 6, and 7 of section 32–08–01. The proceedings on such attachment shall be conducted in all respects as if the claim were due, but judgment must not be rendered in the action until the debt upon which such action is commenced shall become due, and the complaint must state that the action is commenced before the debt is due for the purpose of obtaining the issuance of an attachment, but need not state the grounds of the attachment. Upon the discharge of such attachment, except under the provisions of section 32–08–19, the action shall be dismissed, but without prejudice to the bringing of a new action.

32–08–03. *When action deemed commenced.*—Within the meaning of sections 32–08–01 and 32–08–02, an action shall be deemed commenced when the summons is issued, but personal service of such summons must be made or publication thereof commenced within sixty days after the issuance of the warrant of attachment.

32–08–04. *Warrant—By whom issued.*—The warrant of attachment shall be issued by the clerk of the court in which the action is commenced, shall be attested in the name of a judge thereof, and sealed with the seal of the court.

32–08–05. *Warrant—Upon what issued.*—At the time of applying for the warrant of attachment, the plaintiff shall file in the office of the clerk of the court in which the action is commenced:

1. A verified complaint setting forth a proper cause of action for attachment in favor of the plaintiff and against the defendant;

2. An affidavit setting forth in substantially the language of the statute one or more of the grounds of attachment enumerated in section 32–08–01, if the claim upon which the action is commenced is due, and, if such claim is not due, one or more of the grounds enumerated in subsections 3, 4, 6 and 7 of that section; and

3. An undertaking in accordance with section 32–08–06.

32–08–06. *Plaintiff's undertaking.*—The clerk must require a written undertaking on the part of the plaintiff with sufficient surety to the effect that if the defendant recovers judgment, or the attachment is set aside by the order of the court, the plaintiff will pay all costs that may be awarded to the defendant, and all damages which he may sustain by reason of the attachment, not exceeding the sum named in the undertaking, which shall be set in the discretion of the court but in no case shall be less than five hundred dollars. If the attachment is set aside by order of the court, the defendant may bring an action upon such undertaking without first obtaining judgment against the plaintiff in the action in which such undertaking was given.

32–08–07. *Requisites of warrant.*—The warrant must recite briefly the statutory grounds of the attachment, but shall not set forth plaintiff's cause of action, and must be directed to the sheriff of any county in which property of such defendant may be, and must require him to attach and safely keep all the property of such defendant within his county not exempt from execution, or so much thereof as may be sufficient to satisfy the plaintiff's demand, with costs and disbursements, the amount of such demand to be stated in the warrant in conformity with the complaint unless the defendant delivers to him an undertaking in favor of the plaintiff with sufficient surety to the effect that he will pay any judgment which the plaintiff may obtain against him in the action, or an undertaking with like surety to the effect that the property of such defendant, which has been or is about to be attached, shall be forthcoming in substantially as good condition as it is at the time of giving the undertaking to answer such judgment. Such undertaking shall be in amount equal to the value of such property according to the sheriff's inventory. Several warrants may be issued at the same time to the sheriffs of different counties.

32–08–08. *Execution of warrant.*—The sheriff immediately must execute the warrant by levying upon so much of the personal and real property of the defendant within his county, not exempt from execution, as will satisfy the plaintiff's demand, with the costs and disbursements. He must take into custody all books of account, vouchers, and other papers relating to the personal property attached, and all evidence of defendant's title to the real property attached, which he must keep safely to be disposed of as prescribed in this chapter. The sheriff, to whom a warrant of attachment is delivered, may levy from

time to time and as often as is necessary, until the amount for which it was issued has been secured, or final judgment has been rendered in the action.

32–08–09. *Inventory to be made—Perishable property.*—Immediately upon making such seizure the sheriff shall make a true and complete inventory of all the property so seized and of the books, vouchers, and papers taken into his custody, stating therein the estimated value of the several articles and kinds of personal property, enumerating such of them as are perishable, and giving a description of the real property so attached. Such inventory must be signed by the sheriff. Any subsequent execution of the warrant of attachment upon other property of the debtor, and an inventory thereof, must be made in like manner. The sheriff, within twenty days after making such seizure, shall file such inventory and a return of his doings upon such attachment with the clerk of the district court who issued the warrant. In case a forthcoming undertaking is given by the defendant under the provisions of section 32–08–07 for property before a levy has been made thereon, the sheriff shall make and return an inventory of such property in accordance with the provisions of this section.

32–08–10. *Attachment—How levied.*—A levy under a warrant of attachment must be made as follows:

1. Upon real property, by the sheriff's filing with the register of deeds of the county in which the property is situated a notice of the attachment subscribed by him, stating the names of the parties to the action, the amount of the plaintiff's claim as stated in the warrant, and a description of the property levied upon, such notice to be recorded and indexed by the register of deeds in like manner and in the same book as a notice of the pendency of an action;

2. Upon personal property which by reason of its bulk or other cause cannot be removed immediately,

and upon cattle or horses, commonly known as range stock, and running at large between the first day of November and the next succeeding fifteenth day of May, by the sheriff's filing with the register of deeds of the county in which such property is situated or such livestock is running at large, a notice of the kind described in subsection 1 of this section. In the case of range stock, such notice shall specify the number, as nearly as may be, and shall contain a description of such stock by marks and brands, and such levy shall be as valid and effectual as if such property had been seized and the possession and control thereof retained by the officer. The register of deeds shall receive and file all such notices, numbering the same consecutively, and must keep the same in his office in regular and orderly file, and shall make an entry thereof in a book to be kept for that purpose, and designated as the index of attachments, in the order in which they are received. Such entry shall contain in separate columns the names of the defendants alphabetically arranged, the names of the plaintiffs, the number endorsed upon the notice, the amount claimed by the plaintiff, and the time of the filing. Notwithstanding the provisions of this subsection, an attachment, by direction of the plaintiff or his attorney, may be levied upon the property mentioned in this subsection in accordance with subsection 3 of this section, but if additional costs are made by such a levy the same shall not be allowed to the plaintiff, if in the judgment of the court the taking of the property into custody of the sheriff was unnecessary;

3. Upon personal property capable of manual delivery, including bonds, promissory notes, or other instruments for the payment of money,

by taking the same into the sheriff's actual custody. He thereupon without delay must deliver a copy of the warrant to the person from whose custody such property is taken; and

4. Upon other personal property by leaving a copy of the warrant and a notice showing the property attached with the person holding the same, or, if it consists of a demand other than as specified . . . or if it consists of a right or share in the stock of a corporation or interest or profits thereon, with the president or other head of the corporation, or the secretary, cashier, or managing agent thereof.

The lien of the attachment shall be effectual from the time when a levy is made in accordance with the foregoing provisions.

**32-08-11. *Pledged or mortgaged property may be levied on.*—**When property is pledged or mortgaged for the payment of money or the performance of any contract or agreement, the right and interest in such property of the person pledging or mortgaging the same may be attached and sold on execution, and the purchaser at such sale shall acquire all right and interest of the defendant therein.

**32-08-12. *Warrant and notice of levy to be served.*—**In the cases mentioned in subsections 1 and 2 of section 32-08-10, the sheriff, within thirty days after the levy of an attachment, shall serve the warrant of attachment, together with a notice of levy describing the particular property levied on, in the manner provided for the service of a summons as follows:

1. If the levy is made upon real property, upon the occupant thereof if any; or

2. If upon personal property mentioned in said subsection 2, upon the person in whose custody the same may be.

The failure of the sheriff to serve such warrant or notice shall not invalidate the levy, but he shall be liable to the person whose property is attached for any damages which may be sustained by reason of such failure.

**32-08-13. *Property claimed by third person—How claim made.*—**If any property levied upon by the sheriff by virtue of a warrant of attachment is claimed by any person other than the defendant, and such person, his agent or attorney, makes affidavit of his title thereto or his right to the possession thereof, stating the value thereof and the ground of such title or right, the sheriff may release such levy, unless the plaintiff on demand indemnifies the sheriff against such claim by an undertaking executed by a sufficient surety, and no claim to such property by any person other than the defendant shall be valid against the sheriff, unless so made, and notwithstanding such claim when so made he may retain such property under levy a reasonable time to demand such indemnity.

**32-08-14. *Certificate of a defendant's interest.*—**Upon the application of the sheriff holding a warrant of attachment, the president or other head of a corporation, or the secretary, cashier, or managing agent thereof, or a debtor of the defendant, or a person holding property, including a bond, promissory note, or other instrument for the payment of money belonging to the defendant, must furnish to the sheriff a certificate under his hand, specifying the rights or number of shares of the defendant in the stock of the corporation with all dividends declared or encumbrances thereon, or the amount, nature, and description of the property held for the benefit of the defendant, or of the defendant's interest in property so held, or of the debt or demand owing to the defendant, as the case requires. If such officer, debtor, or individual refuses to furnish such certificate, or if it is made to appear by affidavit or otherwise to the satisfaction of the court or judge thereof, that there is reason to suspect that any certificate

given by him is untrue or that it fails to set forth fully the facts required to be shown thereby, he may be required by order of the court to attend before him and be examined on oath concerning the same, and obedience to such order may be enforced by proceedings as for a contempt.

32–08–15. *Custody and collection of property—Action by sheriff.*—The sheriff, subject to the direction of the court, must collect and receive all debts, effects, and things in action attached by him. He may maintain any action or special proceeding in his name or in the name of the defendant necessary for that purpose to reduce to his actual possession an article of personal property capable of manual delivery but of which he has been unable to obtain possession, and in such action the defendant may be enjoined from disposing of such property. He may discontinue such an action or special proceeding at such time and on such terms as the court directs.

32–08–16. *Plaintiff may prosecute actions—Undertaking.*—The actions and special proceedings authorized in this chapter to be commenced by the sheriff may be prosecuted by the plaintiff or under his direction upon the delivery by him to the sheriff of an undertaking executed by sufficient surety, to the effect that the plaintiff will indemnify the sheriff for all damages, costs, and expenses on account thereof, not exceeding two hundred fifty dollars in any one action. Such surety in all cases when required by the sheriff shall justify as in other cases.

32–08–17. *Property perishable or likely to depreciate in value may be sold.*—If property attached is perishable, the court, by an order made with or without notice as the urgency of the case may require, may direct the sheriff to sell such property at public auction, and thereupon the sheriff must sell it accordingly. If the attached property is of such a character that it is liable greatly to depreciate in value during the pendency of the action or consists of live animals, the same proceedings may be had as in the case of perishable property, but such notice of the application for the order shall be given to the parties to the action as the court prescribes. The order directing the sale must fix the time and place of sale, and notice thereof must be given in such manner and for such time as is prescribed in the order.

32–08–18. *Defendant may apply for discharge.*—The defendant, at any time after he has appeared in the action and before final judgment, may apply to the clerk who issued the attachment, or to the court, to discharge the attachment as to the whole or any part of the property attached.

32–08–19. *Undertaking for discharge.*—Upon an application for discharge of an attachment, the defendant must give an undertaking with sufficient surety to the effect that the property of such defendant, which has been attached, shall be forthcoming in substantially as good condition as it is at the time of the application, to answer any judgment which the plaintiff may recover against him in the action, which undertaking shall be in an amount equal to the value of the property according to the sheriff's inventory, or the defendant, at his election, may give an undertaking with sufficient surety to the effect that on demand he will pay to the plaintiff the amount of any judgment which may be recovered in the action against him not exceeding a sum specified in the undertaking with interest. The sum so specified must be at least equal to the amount of the plaintiff's demand as specified in the warrant of attachment, or, at the option of the defendant, equal to the appraised value of the property attached according to the sheriff's inventory, or, if the application is to discharge the attachment as to a part only of the property attached, equal to the appraised value of that part.

32–08–20. *Undertaking when there are two or more defendants.*—When there are two or more defendants and an application is made as prescribed in sec-

tions 32–08–18 and 32–08–19 by one or more, but not all of them, the undertaking must provide for the payment of any judgment which may be recovered against any of the defendants in the action, unless the applicant makes proof by affidavit to the satisfaction of the court that the property in respect to which the application is made belongs to him separately, in which case the undertaking must provide for the payment of any judgment which may be recovered in the action against the applicant either alone or jointly with any other defendant. When an application is made as prescribed in this section, at least two days' notice thereof, with a copy of the affidavit, must be served upon the plaintiff's attorney, who may oppose the application by affidavit on the ground that an interest in the property is owned or had by one or more of the other defendants.

32–08–21. *Partnership property—Undertaking.*—If the warrant of attachment is levied upon the interest of one or more partners in personal property of the firm, the other partners, or one or more of them, at any time before judgment, may apply to the court from which the warrant of attachment issued, or a judge thereof, upon affidavit stating such fact, for an order to discharge the attachment as to the partnership property. The applicant must give an undertaking with sufficient surety to the effect that if judgment shall be rendered in the action in favor of the plaintiff, he will pay to the sheriff on demand the amount of defendant's interest in such partnership property, the amount of such interest to be determined by reference or otherwise as the court may direct. The amount of such undertaking must be fixed by the court or judge thereof, and must not be less than the value of the interest of the defendant in the personal property of the partnership, and for the purpose of fixing the amount of the undertaking the court may hear affidavits or oral testimony respecting the value of the defendant's interest in the attached property.

32–08–22. *Undertaking must be filed and served—Exceptions thereto.*—An undertaking given as prescribed in sections 32–08–19, 32–08–20, and 32–08–21 must be filed with the clerk. A copy thereof with a notice of the filing must be served forthwith upon the plaintiff's attorney, who may give notice to the sheriff that he excepts to the sufficiency of the surety. The sheriff shall be responsible for the sufficiency of the surety upon any undertaking given by the defendant and may retain possession of the property attached and the proceeds thereof in his hands, until the objection to the surety is waived or until he justifies or a new surety is substituted and justified.

32–08–23. *Giving undertaking not waiver or right to move discharge.*—The giving of any of the undertakings mentioned in this chapter by the defendant shall not operate as a waiver of his right to move to discharge the attachment, and if such attachment is discharged on motion any undertaking given by the defendant shall be null and void and shall be returned to him.

32–08–24. *Who may move discharge.*— In all cases the defendant, or any person who has acquired a lien upon or interest in the defendant's property after it was attached, may move to discharge the attachment. If the motion is made upon affidavit on the part of the defendant, or a person who has acquired a lien upon or interest in the defendant's property after it was attached, but not otherwise, the plaintiff may oppose the same by affidavit or other proof in addition to the affidavit upon which the attachment was granted, and in such case the defendant or other person who has acquired a lien upon or interest in the defendant's property after it was attached may sustain the motion by affidavit or other proof in rebuttal of the affidavits or other proof offered and submitted on the part of the plaintiff to oppose the motion. If on such hearing it appears to the satisfaction of the court that the attachment was irregularly issued, or that the affidavit upon which it was is-

sued is untrue, the attachment must be discharged.

32–08–25. *Proceedings upon discharge.* —When the warrant of attachment is vacated or annulled, or the attachment is discharged, upon the application of the defendant or other person who has acquired a lien upon or interest in the defendant's property after it was attached, the sheriff must deliver over to the defendant or to the person entitled thereto, upon reasonable demand, all the attached personal property remaining in his hands or that portion thereof as to which the attachment is discharged, or the proceeds thereof, if it has been sold by him.

32–08–26. *Special warrant of attachment.*—If the plaintiff's affidavit for attachment shall particularly describe specific property of the defendant which he desires to attach, a special warrant of attachment shall be issued to the sheriff of the county in which such property is situated requiring him to levy upon such property. Such special warrant of attachment may be issued in the cases and in the manner in which general warrants of attachment may be issued, but the plaintiff's undertaking shall be at least double the value of the specific property to be seized as stated in the plaintiff's affidavit, and in no event shall it be less than two hundred fifty dollars. The special warrant of attachment shall be executed and the property may be released by undertaking in the manner provided for execution and release under a general warrant of attachment, and except as otherwise provided all of the provisions of this chapter are applicable to special warrants of attachment.

32–08–27. *Judgment—How satisfied.*— In case judgment is entered for the plaintiff in the action, the sheriff shall satisfy the same out of the property attached by him, if it shall be sufficient for that purpose;

1. By paying over to such plaintiff the proceeds of all sales of perishable property or of any debts or credits collected by him, or so much as shall be necessary to satisfy such judgment;

2. If any balance remains due and an execution shall have been issued on such judgment, he shall proceed to sell under such execution so much of the attached property, real or personal, except as provided in subsection 4 of this section, as may be necessary to satisfy the balance, if enough for that purpose shall remain in his hands, and in case of the sale of any rights or shares in the stock of a corporation or association, the sheriff shall execute to the purchaser a certificate of sale thereof, and the purchaser thereupon shall have all the rights and privileges in respect thereto which were had by such defendant;

3. If any of the attached property belonging to the defendant shall have passed out of the hands of the sheriff without having been sold or converted into money, such sheriff shall repossess himself of the same, and for that purpose shall have all the authority which he had to seize the same under the attachment, and any person who willfully shall conceal or withhold such property from the sheriff shall be liable to double damages at the suit of the party injured; and

4. Until the judgment against the defendant shall be paid, the sheriff may proceed to collect the notes and other evidences of debt that may have been seized or attached under warrant of attachment, and to prosecute any bond he may have taken in the course of such proceedings, and may apply the proceeds thereof to the payment of the judgment. At the expiration of the six months from the docketing of the judgment, the court, upon the petition of the plaintiff, accompanied by an affi-

davit setting forth fully all the proceedings which have been had by the sheriff since the service of the attachment, the property attached and the disposition thereof, and also the affidavit of the sheriff that he has used diligence and has endeavored to collect the evidences of debt in his hands so attached, and that there remains uncollected of the same any part or portion, shall have power to order the sheriff to sell the same upon such terms and in such manner as shall be deemed proper. Notice of such application shall be given to the defendant or his attorney, if the defendant shall have appeared in the action. In case the summons has not been served personally on the defendant, the court shall make such order as to the service of notice and the time of service as shall be deemed just.

When the judgment and all costs of the proceedings shall have been paid, the sheriff, upon reasonable demand, shall deliver over to the defendant the residue of the attached property, or the proceeds thereof.

**32–08–28.** *Proceedings upon judgment for defendant.*—If the defendant recovers judgment against the plaintiff in the action, any undertaking given by the defendant, all the proceeds of sales and moneys collected by the sheriff, and all property attached remaining in his hands, upon order of the court, shall be delivered by him to the defendant or his agent on request, and the warrant shall be discharged and the property released therefrom.

**32–08–29.** *Cancellation of notices of attachment.*—At any time after the warrant of attachment has been vacated or annulled, or the attachment has been discharged, the court, upon the application of any person aggrieved and with or without notice in the discretion of the court, may direct that any notice filed for the purpose of attaching the property shall be canceled of record by the reg-ister of deeds of the county where it is filed or recorded. The cancellation must be made by the register of deeds, upon the filing in his office of a certified copy of the order directing such cancellation, by an entry to that effect on the margin of the records referring to the order. Such cancellation in like manner may be made by the register of deeds upon a written request directing such cancellation, signed by the plaintiff or his attorney.

**32–08–30.** *Return by officer.*—When the warrant shall be fully executed or discharged, the sheriff must return the same, with his proceedings thereon, to the court in which the action was commenced.