Paul D. REARDON and John E.
Reardon, Plaintiffs,

v.

UNITED STATES of America and Unit-
ed States Environmental Protection
Agency, Defendants.

Civ. A. No. 89–2278–C.

United States District Court,
D. Massachusetts.

Feb. 6, 1990.

Philip D. O'Neill, Jr. and Lorelei J. Borland, Edwards & Angell, Boston, Mass., for plaintiffs.

George B. Henderson, II, Asst. U.S. Atty., for defendants.

CAFFREY, Senior District Judge.

This case is before the court on plaintiffs' motion for a preliminary injunction restraining the defendants from imposing a federal lien on the plaintiffs' property pursuant to section 107($l$) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), as amended, 42 U.S.C. § 9607($l$). The plaintiffs, Paul and John Reardon (the "Reardons"), filed this action against the defendants, the United States and the United States Environmental Protection Agency ("EPA") asserting three counts in their complaint. First, the Reardons claim that they are "innocent landowners" under section 107(b) of CERCLA, 42 U.S.C. § 9607(b), and, consequently, they are not liable to the EPA for the cost of removing contaminated soil from their property or studying future long-term remedies for the site. Second, the Reardons assert that the EPA's imposition of a federal lien under section 107($l$) of CERCLA, 42 U.S.C. § 9607($l$), constitutes a deprivation of their property and violates their rights of procedural due process under the fifth amendment. Third, the Reardons allege that the EPA exceeded its statutory authority under section 107($l$) of CERCLA, 42 U.S.C. § 9607($l$), by placing the federal lien on all their property rather than just the parcels affected by the EPA cleanup. The plaintiffs seek declaratory judgment as to their liability under count one and a preliminary injunction as to counts two and three. For the reasons stated below, counts one and three should be dismissed for lack of subject matter jurisdiction, and, as to count two, plaintiffs' motion for preliminary injunction should be denied.

## I.

The property at issue in this case is a 16–acre parcel of grassy field in Norwood, Massachusetts. The property, now called

Kerry Place, is situated between a residential neighborhood along Pellana Road and an industrial manufacturing plant along Route One. For many years, the land was vacant and neighborhood children used the field as a playground.

Prior to 1979, Kerry Place was part of a larger 25–acre parcel which included the manufacturing plant. On October 10, 1979, the Grant Gear Realty Trust purchased the manufacturing facility and the fenced area around the plant (the "Grant Gear property"). On November 10, 1979, the Reardons, in partnership with Paul J. Birmingham, purchased the remaining property and renamed the principal parcel Kerry Place. The Reardons intended to develop the property commercially.

On April 1, 1983, a resident of Pellana Road reported to the Massachusetts Department of Environmental Quality and Engineering ("DEQE") that Kerry Place had been contaminated with industrial wastes from prior owners of the manufacturing plant. DEQE investigators responded to the complaint and sampled soils from Kerry Place and the Grant Gear property. The DEQE discovered high levels of polychlorinated biphenyls ("PCBs") at certain "hot spots" on both of the properties. Certain samples from Kerry Place contained more than 110,000 parts per million (ppm) of PCBs; the accepted safe levels for PCBs in the environment is 50 ppm.[1]

The contamination was concentrated along a fence marking the boundary between Kerry Place and the Grant Gear property. Upon further investigation, the DEQE learned that, since its first operation in 1942, the manufacturing plant had produced electrical equipment and electrical components. Electrical manufacturers commonly use large quantities of dielectrical fluid which contains PCBs. The DEQE investigators concluded that companies at the Grant Gear property, stretching back many years, had dumped toxic wastes and carcinogens across the fence onto Kerry Place.

On June 19, 1983, the EPA dispatched a technical assistance team to investigate the site. The EPA discovered PCB concentrations ranging from 5,000 to 220,000 ppm in soil samples from Kerry Place and the Grant Gear property. The EPA authorized an immediate cleanup of the contaminated areas.

From June 24 to August 1, 1983, the EPA conducted a full-scale CERCLA removal action at Kerry Place and the Grant Gear property. The EPA removed 518 tons of contaminated soil from both properties, and the soil was trucked to Model City, New York for disposal. The EPA funded this removal action which cost about $200,-000.

In August 1983, the Reardons began to build a road along the fence between Kerry Place and the Grant Gear property. The Reardons also excavated a trench along the fence line. The Reardons notified the EPA of their actions, but the road construction was not done under EPA supervision. As a result of the new grading and excavation, the EPA retested the soil along the roadway. The samples showed PCB contamination as high as 11,000 ppm along the fence line of the Kerry Place property.

In 1984, the Reardons began selling parts of Kerry Place to various new owners. Kerry Place was subdivided into eight lots along the new road, and four of the lots were transferred to various commercial interests. The Reardons retained ownership of the remaining lots at Kerry Place.

In 1985, the EPA notified the Reardons by letter that they may be liable for the costs of cleanup at Kerry Place pursuant to sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606, 9607. The EPA identified the Reardons, along with ten other present and prior owners of the properties, as potentially responsible parties for the contamination. The letter explained that the Reardons, as an owner of the property, may be held liable for the cost of the EPA removal action. The letter, however, did not state the amount of possible liability.

---

**1.** *See* 40 C.F.R. § 761.60 (EPA regulations requiring disposal of soils contaminated at concentrations of 50 ppm or greater).

In 1987, the EPA undertook a long-term remedial investigation and feasibility study ("RI/FS") of the remaining contamination at the Kerry Place and Grant Gear properties. In April 1988, EPA Project Manager Jane Downing met with one of the Reardons to discuss the preliminary results of the field investigations. Sometime afterwards, Downing learned that the Reardons intended to remove certain contaminated soil on their own so that they could develop the property. On October 20, 1988, Downing wrote a letter to the Reardons informing them of the test results from sampling data which would be used in a draft RI/FS and Downing requested the Reardons to keep her informed of any removal actions taken at the site. On December 2, 1988, Downing forwarded a list of potential hazardous waste transporters to the Reardons, and reminded the Reardons to coordinate any removal actions with the EPA. In January 1989, the Reardons informed Downing they had completed their own removal action at Kerry Place.[2]

On March 23, 1989, the EPA filed a notice of lien with the Norfolk County Registry of Deeds on the Reardons' remaining lots at Kerry Place pursuant to section 107($l$) of CERCLA, 42 U.S.C. § 9607($l$). On March 28, 1989, the EPA also notified the Reardons of their action by letter. Subsequently, the parties exchanged correspondence concerning the possible amount of liability secured by the lien. In a letter dated July 12, 1989, the EPA had determined that the Reardons' share of the cleanup costs would total $336,709. The EPA emphasized, however, that this amount was calculated only for the purpose of possible settlement, and it was not binding as to the Reardons' potential liability. On September 29, 1989, the regional administrator for the EPA selected a long-term

remedy for the entire Norwood property which would cost an estimated $16,100,000.

On October 10, 1989, the Reardons filed this action seeking declaratory judgment and a preliminary or permanent injunction removing the lien from Kerry Place.

## II.

Congress passed CERCLA in 1980 to provide for the cleanup of abandoned hazardous waste sites.[3] As amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"),[4] CERCLA creates three statutory alternatives for responding to releases or threatened releases of hazardous substances. First, the EPA can conduct its own cleanup of a site and then recover its costs from responsible parties. 42 U.S.C. §§ 9604(a), 9607(a). Second, the EPA can order the potentially responsible parties to carry out a cleanup of their property. 42 U.S.C. § 9606(a). Third, certain third parties can carry out the cleanup and recover their costs against responsible parties. 42 U.S.C. §§ 9607(a), 9612.

In the first instance, the United States may bring an action in a United States district court against a responsible party to recover its costs for the cleanup. 42 U.S.C. §§ 9607(a), 9613(b), 9613(h). CERCLA makes the owner or operator of a facility where hazardous waste has been disposed liable to the United States for its response costs, any natural resource damages, and certain other costs. 42 U.S.C. § 9607(a). A facility is defined broadly to include "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located...." 42 U.S.C. § 9601(9)(B). CERCLA imposes strict liability on responsible parties subject only to certain limited statutory defenses. 42 U.S.C. § 9607(b).

---

**2.** Apparently, the Reardons contest that there was any correspondence between them and the EPA from 1985 until 1989. In his sworn affidavit, Paul Reardon states that after receiving the letter notifying him of potential liability for the cleanup in October 1985, "we did not receive any further communication from DEQE or EPA until March 1989." Reardon Affidavit, at 4–5.

While this stands in sharp contrast to the sworn affidavit of Downing, we need not resolve this factual issue to decide the specific issues presented in this case.

**3.** See Pub.L. 96–510, Dec. 11, 1980, 94 Stat. 2767.

**4.** See Pub.L. 99–499, Oct. 17, 1986, 100 Stat. 1613.

The liability under CERCLA extends to the costs of any response actions taken by the United States. 42 U.S.C. § 9607(a)(4)(A). Response actions are defined to include removal and remedial actions. 42 U.S.C. § 9601(25). A removal action is generally an immediate or interim measure taken to abate a present, serious threat to the public. 42 U.S.C. § 9601(23). A remedial action, on the other hand, is a long-term or permanent remedy of the problem. 42 U.S.C. § 9601(24). Notably, both removal and remedial actions are defined to include "enforcement activities related thereto." 42 U.S.C. § 9601(25).

As amended by SARA, section 107($l$) of CERCLA provides for the creation of a federal lien on property where the United States has spent funds cleaning up a facility. 42 U.S.C. § 9607($l$).[5] The federal lien attaches to property where the United States has conducted a removal or remedial action and where the owner of the property is a potentially responsible party. 42 U.S.C. § 9607($l$)(1). The lien arises, as a matter of law, at the time when the United States has first incurred costs for a response action or when the responsible parties first receive notice of the lien, whichever occurs later. 42 U.S.C. § 9607($l$)(2). The lien remains in force until the liability is satisfied or the lien becomes unenforceable due to the statute of limitations. 42 U.S.C. § 9607($l$)(2); *see also* 42 U.S.C. § 9613(g). The lien is valid against the rights of any purchaser, holder of security interests, or judgment lien creditor whose interests are not perfected under applicable state law before notice of the federal lien is filed. 42 U.S.C. § 9607($l$)(3). The lien may be enforced by an action in rem in any United States district court where the removal or remedial action is occurring or has occurred. 42 U.S.C. § 9607($l$)(4).

CERCLA provides a specific statutory scheme for judicial review of litigation arising from its provisions. 42 U.S.C. § 9613. Concerning jurisdiction, section 113(b) of CERCLA states that "the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter, without regard to the citizenship of the parties or the amount in controversy." 42 U.S.C. § 113(b). The jurisdictional grant in section 113(b), however, is expressly subject to the provisions of section 113(a) and 113(h) of CERCLA. 42 U.S.C. § 9613(b). Section 113(a) provides that any regulation promulgated under CERCLA shall be reviewed by the Court of Appeals for the District of Columbia Circuit. 42 U.S.C. § 9613(a). Section 113(h) creates certain limitations on the timing of review available in federal courts. 42 U.S.C. § 9613(h).

Section 113(h) of CERCLA provides that judicial review of administrative actions shall not be available in any federal court until the United States or other third parties initiate an enforcement action. 42 U.S.C. § 9613(h).[6] Federal courts may only

---

**5.** In pertinent part, 42 U.S.C. § 9607($l$) states:
 (1) In General
 All costs and damages for which a person is liable to the United States under subsection (a) of this section ... shall constitute a lien in favor of the United States upon all real property and rights to such property which—
 (A) belong to such person; and
 (B) are subject to or affected by a removal or remedial action.
 (2) Duration
 The lien imposed by this subsection shall arise at the later of the following:
 (A) The time costs are first incurred by the United States with respect to a response action under this chapter.
 (B) The time that the person referred to in paragraph (1) is provided (by certified or registered mail) written notice of potential liability.

Such lien shall continue until the liability for the costs (or a judgment against the person arising out of such liability) is satisfied or becomes unenforceable through the operation of the statute of limitations provided in section 9613 of this title.
42 U.S.C. § 9607($l$).

**6.** Section 113(h) of CERCLA states:
 (h) Timing of Review
 No federal court shall have jurisdiction under Federal law other than section 1332 of Title 28 (relating to the diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:

hear challenges to EPA action under CERCLA when the United States or a third party is seeking to recover response costs, when the United States seeks to impose penalties for ignoring EPA orders, when the United States or third parties seek contribution or reimbursement from responsible parties, when citizen suits are filed challenging an EPA remedial action, or when the EPA seeks to compel a certain remedial action. 42 U.S.C. § 9613(h)(1–5). This limitation is drafted broadly and covers "any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title ..." 42 U.S.C. § 9613(h).

Congress passed section 113(h) in order to ensure the prompt cleanup of hazardous waste sites would not be delayed by the litigation under CERCLA. The Senate Judiciary Committee stated:

> This amendment is to expressly recognize that pre-enforcement review would be a significant obstacle to the implementation of response actions and the use of administrative orders. Pre-enforcement review would lead to considerable delay in providing cleanups, would increase response costs, and would discourage settlements and voluntary cleanups.

S.Rep. No. 11, 99th Cong., 1st Sess. 58 (1985). The House Committee on Public Works and Transportation stated:

> The purpose of this provision is to ensure that there will be no delays associated with a legal challenge of the particular removal or remedial action selected under section 104 or secured through administrative order or judicial action under section 106.

H.R.Rep. No. 253(V), 99th Cong., 1st Sess. 25 (1986), *reprinted in* 1986 U.S.Code Cong. & Admin. News 2835, 3148.

(1) An action under section 9607 of this title to recover response costs or damages or for contribution.
(2) An action to enforce an order issued under section 9606(a) of this title to recover a penalty for violation of such order.
(3) An action for reimbursement under section 9606(b)(2) of this title.
(4) An action under 9659 of this title (relating to citizen suits) alleging that the removal or

## III.

The threshold issue presented in this case is whether this Court has subject matter jurisdiction over the Reardons' claims. The EPA, invoking section 113(h) of CERCLA, 42 U.S.C. § 9613(h), argues that Congress has specifically barred this Court from reviewing either the Reardons' statutory or constitutional claims at this time, and, therefore, this Court lacks subject matter jurisdiction over any aspect of this case. In response, the Reardons assert that Congress granted this Court authority to review their statutory and constitutional claims under section 113(b) of CERCLA, 46 U.S.C. § 9613(b), section 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, and certain provisions of 28 U.S.C. § 2410. In addition, the Reardons argue that Congress cannot encroach on this Court's essential function of reviewing statutory provisions for procedural due process violations, and, consequently, the fifth amendment itself gives this Court subject matter jurisdiction to review the case for constitutional infirmities. In analyzing these arguments, this Court shall review the Reardons' statutory and constitutional claims separately.

### A. Statutory Claims

The Reardons have two statutory claims in their complaint. In count one, the Reardons seek a declaration of their liability under section 107 of CERCLA, and, in count three, the Reardons allege the EPA has overreached its authority under section 107(*l*) The Reardons offer three possible grounds for jurisdiction over their statutory claims.

### 1. Section 113(b) of CERCLA

■ The Reardons assert that section 113(b) of CERCLA grants this Court juris-

remedial action taken under section 9604 of this title or secured under 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.
(5) An action under 9606 of this title in which the United States moved to compel a remedial action.
42 U.S.C. § 9613(h).

diction to review their statutory claims. As noted above, section 113(b) grants federal courts exclusive, original jurisdiction over all controversies arising under CERCLA. 42 U.S.C. § 9613(b). Section 113(b), however, is expressly subject to the timing of review limitations imposed by section 113(h). 42 U.S.C. § 9613(h). Under section 113(h), "no federal court shall have jurisdiction under federal law ... to review any challenges to removal or remedial action" selected by the EPA except in five enumerated circumstances. *Id.* None of the excepted circumstances apply in this case.[7]

Courts have consistently held that section 113(h) of CERCLA bars pre-enforcement judicial review[8] of the EPA's choice of removal or remedial actions. *See Voluntary Purchasing Groups, Inc. v. Reilly,* 889 F.2d 1380, 1387–88 (5th Cir.1989); *Alabama v. EPA,* 871 F.2d 1548, 1558 (11th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 538, 107 L.Ed.2d 535 (1989); *South Macomb Disposal Authority v. EPA,* 681 F.Supp. 1244, 1251 (E.D.Mich.1988). Before the SARA amendments, courts refused to review challenges to EPA removal or remedial actions where judicial review would delay cleanup activities. *See Wagner Seed Co. v. Daggett,* 800 F.2d 310, 315 (2d Cir.1986); *Barnes v. United States District Court for Western Dist. of Wash.,* 800 F.2d 822 (9th Cir.1986); *United States v. Outboard Marine Corp.,* 789 F.2d 497, 505–06 (7th Cir.), *cert. denied,* 479 U.S. 961, 107 S.Ct. 457, 93 L.Ed.2d 403 (1986); *Wheaton Industries v. EPA,* 781 F.2d 354, 356 (3d Cir.1986); *Lone Pine Steering Committee v. EPA,* 777 F.2d 882, 886–87 (3d Cir.1985), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). Section 113(h), enacted as part of the SARA amendments, codified this prior case law prohibiting the pre-enforcement review of

EPA cleanup actions. *See Voluntary Purchasing Groups,* 889 F.2d at 1387–88; *South Macomb,* 681 F.Supp. at 1248–49. Since the enactment of SARA, courts have uniformly recognized Congress' intent to preclude any judicial review except according to the limited circumstances described in section 113(h)(1–5). *See Voluntary Purchasing Groups,* 889 F.2d at 1389–91; *Alabama v. EPA,* 871 F.2d at 1558; *Dickerson v. EPA,* 834 F.2d 974, 977–78 (11th Cir. 1987); *Solid State Circuits, Inc. v. EPA,* 812 F.2d 383, 386 n. 1 (8th Cir.1987); *South Macomb,* 681 F.Supp. at 1251.

In this case, the Reardons claim that section 113(h) of CERCLA does not apply. The Reardons argue that the federal lien was imposed after the removal action on their property was complete, and, therefore, the Reardons are not challenging a pre-enforcement action by the EPA. Further, the Reardons argue that since the EPA's removal action is complete, litigation of their liability under the lien will not delay any cleanup at Kerry Place and will not run contrary to purpose of CERCLA. After a careful review of the statutory language in CERCLA and the facts in this case, these arguments are not persuasive.

First, under the statutory provisions of CERCLA, the Reardons are clearly challenging both a removal action and a remedial action selected by the EPA. By definition, the terms "removal action" and "remedial action" include "any enforcement activities related thereto." 42 U.S.C. § 9601(25). While the initial removal action undertaken at Kerry Place may be complete, the EPA imposed the lien to secure its funds already expended in the cleanup. Furthermore, as the EPA has continued to conduct a long-range RI/FS of

---

**7.** In this case, the only possible exception would be section 113(h)(1) which allows review of "an action under section [107] of this title to recover response costs or damages or for contribution." 42 U.S.C. § 9607(a). Reading the statute broadly, the federal lien is imposed under section 107. The federal lien, however, clearly is not "an action" to recover response costs. Rather, the lien is a separate statutory remedy designed to protect the funds expended by the government in cleaning up a hazardous waste site. This

distinction is made clear by section 107(*l*)(4) which states that the lien is only enforceable by an action in rem after the lien is created.

**8.** The term *pre-enforcement judicial review,* as used in this memorandum, refers to judicial review of EPA actions prior to the time that the EPA or a third party undertakes a legal action to enforce an order or to seek recovery of costs for the cleanup of a hazardous waste site.

the site, the lien also secures the ongoing costs of its remedial action on Kerry Place and Grant Gear properties. In both cases, the lien is an enforcement activity related to EPA removal or remedial actions. Consequently, the Reardons' challenge to the lien is a "challenge to a removal or remedial action selected" by the EPA. 42 U.S.C. § 9613(h). Section 113(h) expressly precludes this court from reviewing such actions.

Second, the litigation of liability under this lien may well delay the continuing cleanup at the Kerry Place and Grant Gear properties. While the initial removal action is complete, the EPA has undertaken a longterm RI/FS on both the Kerry Place and Grant Gear properties. The local EPA administrator has recently approved an estimated $16 million extensive cleanup for the Norwood site. To the extent that the EPA would need to expend personnel and funds litigating the Reardons' liability for prior cleanup, the on-going remedial action would be hampered and delayed. Congress clearly intended to bar such dilatory actions.

In sum, section 113(b) cannot serve to provide subject matter jurisdiction in this case. Section 113(h), which limits section 113(b)'s general grant of jurisdiction, expressly precludes the pre-enforcement review of EPA's selection of removal or remedial actions. In this case, the federal lien at issue is an enforcement activity related to both the removal action which is complete and the remedial action which is ongoing at the Kerry Place property. Thus, section 113(h) divests this court of jurisdiction to hear the Reardons' statutory claims in this case.

### 2. Section 702 of the APA

■ The Reardons next assert that section 702 of the APA creates jurisdiction over this action. Section 702 of the APA provides, in relevant part, that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Section

701(a) of the APA, however, withdraws this judicial review to the extent the relevant statute precludes judicial review. 5 U.S.C. § 701(a). *See Block v. Community Nutrition Institute*, 467 U.S. 340, 345, 104 S.Ct. 2450, 2453–54, 81 L.Ed.2d 270 (1984). In *Block*, the Supreme Court recognized that section 702 creates a presumption in favor of judicial review of administrative action, but the presumption "may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent." *Id.* at 349, 104 S.Ct. at 2455. Courts have consistently interpreted section 113 of CERCLA to preclude judicial review under section 702 of the APA. *See Voluntary Purchasing Groups*, 889 F.2d at 1386–91; *Alabama*, 871 F.2d at 1559–60; *Dickerson*, 834 F.2d at 977–78; *Wheaton*, 781 F.2d at 356–57.

In this case, the Reardons argue that section 113(h) of CERCLA does not overcome the presumption in favor of judicial review of administrative action created by section 702 of the APA. Given the preceding analysis of section 113(h) and the applicable case law, this argument has no merit. On its face, section 113 of CERCLA creates its own statutory scheme for judicial review, and, as noted above, section 113 of CERCLA bars judicial review of this action. The objectives of CERCLA and its legislative history support this position. *See Voluntary Purchasing Groups*, 889 F.2d at 1386–91; *Alabama*, 871 F.2d at 1559–60; *Dickerson*, 834 F.2d at 977–78; *Wheaton*, 781 F.2d at 356–57. In sum, section 702 of the APA does not create jurisdiction over the Reardons' statutory claims where section 113 of CERCLA precludes judicial review.

### 3. 28 U.S.C. § 2410

■ The Reardons next claim that provisions of 28 U.S.C. § 2410 give this Court jurisdiction over their statutory claims. Title 28 U.S.C. § 2410 provides, in pertinent part, that: "the United States may be named a party in any civil action or suit in any district court ... to quite title to ... real or personal property on which the United States has or claims a mortgage or other lien." The Reardons claim that 28

U.S.C. § 2410 creates a grant of jurisdiction for any individual to bring an action to quiet their title to property and, where a federal lien exists on the property, to join the United States as a party to that action. In this case, the Reardons claim their suit challenging the federal lien is an action to quiet their title permissible under 28 U.S.C. § 2410. On a careful review of the case law interpreting 28 U.S.C. § 2410, I rule that the Reardons' argument has no merit.

The First Circuit has clearly recognized that this provision "merely waives sovereign immunity, but does not authorize a suit unless there are jurisdictional grounds independent of the statute." *Remis v. United States*, 273 F.2d 293, 294 (1st Cir. 1960). *See also Hudson County Board of Chosen Freeholders v. Morales*, 581 F.2d 379, 383 (3d Cir.1978) ("§ 2410, while it does not of itself confer jurisdiction on district courts, is the basis for finding a waiver of sovereign immunity. . . ."); *Pacific Mut. Life Ins. v. American Nat'l Bank & Trust Co.*, 642 F.Supp. 163, 167 (N.D.Ill.1986) ("§ 2410 does not independently create jurisdiction over the suit against the United States; rather, it merely waives sovereign immunity. . . ."). In this case, section 2410 cannot serve as independent authority for this Court to hear the Reardons' statutory claims. As discussed above, section 113(b) of CERCLA and section 702 of the APA do not create subject matter jurisdiction for the Reardons' statutory claims. Consequently, absent an independent source of jurisdiction, section 2410 also fails to create subject matter jurisdiction over the Reardons' statutory claims.

In sum, there is no subject matter jurisdiction for this court to review the Reardons' statutory claims. Therefore, count one for declaratory judgment as to liability under section 107 of CERCLA and count three challenging the scope of EPA action in imposing the lien should be dismissed. Next, this Court turns to the Reardons' constitutional claim.

### B. Constitutional Claim

The Reardons also assert one constitutional claim. In count two, the Reardons allege that the federal lien violates their rights to procedural due process under the fifth amendment. The Reardons offer the same three grounds for jurisdiction over count two, as discussed above, and, in addition, the Reardons claim the fifth amendment itself creates jurisdiction over their due process challenge. In response, the United States argues again that section 113(h) of CERCLA bars this Court from reviewing any challenge to section 107($l$), including possible due process violations. Despite these common arguments, the constitutional nature of the claim alters our jurisdictional analysis.

Initially, this Court must reexamine whether Congress intended section 113(h) to preclude all challenges to removal and remedial actions under CERCLA, including constitutional claims alleging due process violations. And if so, then, this court must decide whether Congress has the power to withdraw jurisdiction and delay the judicial review of section 107($l$) for alleged procedural due process violations until the EPA seeks to enforce the lien. Each issue shall be discussed in turn.

### 1. Congressional Intent in Section 113(h)

■ The Supreme Court has recognized the presumption that Congress does not intend to proscribe all judicial review of administrative action. *See Webster v. Doe*, 486 U.S. 592, 599–606, 108 S.Ct. 2047, 2051–2055, 100 L.Ed.2d 632, 642–47 (1988); *Traynor v. Turnage*, 485 U.S. 535, 539–46, 108 S.Ct. 1372, 1377–81, 99 L.Ed.2d 618, 626–31 (1988); *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 672–73, 106 S.Ct. 2133, 2136–37, 90 L.Ed.2d 623 (1986); *Johnson v. Robison*, 415 U.S. 361, 372–74, 94 S.Ct. 1160, 1168, 39 L.Ed.2d 389 (1974). This presumption is particularly strong when constitutional claims are raised.

> When [a] plaintiff seeks to invoke the aid of the judicial branch on constitutional grounds, the Supreme Court and this court have both indicated that only the clearest evocation of congressional intent to proscribe judicial review of constitutional claims will suffice to overcome the presumption that the Congress would not

wish to court the constitutional dangers inherent in denying a forum in which to argue that government action has injured interests that are protected by the Constitution.

*Ungar v. Smith,* 667 F.2d 188, 193 (D.C. Cir.1981). *See also Webster,* 486 U.S. at 599–606, 108 S.Ct. at 2051–55; *Bartlett v. Bowen,* 816 F.2d 695, 699 (D.C.Cir.1987) (quoting *Ungar* ). The Supreme Court has established that, absent "clear and convincing evidence" to the contrary, congressional intent should be construed strictly to avoid facing the "serious constitutional question" of Congress precluding all judicial review of constitutional claims. *Michigan Academy,* 476 U.S. at 681 n. 12, 106 S.Ct. at 2141 n. 12. *See also Weinberger v. Salfi,* 422 U.S. 749, 762, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522 (1975); *Robison,* 415 U.S. at 366–67, 94 S.Ct. at 1165–66. In light of these standards, this Court shall examine Congress' intent in drafting section 113(h).

The plain language of section 113(h) appears unequivocal in precluding all challenges to EPA action under CERCLA. Section 113(h) states "[n]o federal court shall have jurisdiction under Federal law other than section 1332 of Title 28 ... to review any challenges to removal or remedial actions selected under section 9604 of this title ..." 42 U.S.C. § 9613(h). This section divests all federal courts from jurisdiction subject to its express provisions. By implication, this section specifically bars any federal court from asserting federal question jurisdiction under 28 U.S.C. § 1331 which would include possible constitutional challenges. Further, this section applies to "any challenges" to EPA actions under the enumerated provisions of CERCLA. Finally, as discussed above, the federal lien under section 107(*l* ) is clearly an enforcement activity related to both a removal and remedial action, and, by definition, the constitutional challenge to section

107(*l* ) is precluded by the plain language of section 113(h).

The legislative history of section 113(h) confirms Congress' intent to bar any action which might delay cleanup actions under CERCLA. Senator Thurmond, chairman of the Senate Judiciary Committee, commented on section 113(h) as follows:

[Section 113(h) ] is intended to be comprehensive. It covers all lawsuits, under any authority, concerning the response actions that are performed by the EPA.... The section also covers all issues that could be construed as a challenge to the response, and limits those challenges to the opportunities specifically set forth in the section.... Citizens, including potentially responsible parties, cannot seek review of the response action or their potential liability for a response action—other than in a suit for contribution—unless the suit falls within one of the categories provided in this section.

132 Cong.Rec. S14929 (daily ed. Oct. 3, 1986). The Senate Environment and Public Works Committee clearly implied that section 113(h) was to preclude constitutional as well as statutory claims from judicial review.

As several courts have noted, the scheme and purposes of CERCLA would be disrupted by affording judicial review of orders or response actions prior to commencement of a government enforcement or cost recovery action. *See, e.g., Lone Pine Steering Committee v. EPA,* 600 F.Supp. 1487 (D.N.J.1987 [1985] ). These cases correctly interpret CERCLA with regard to the unavailability of preenforcement review.

S.Rep. No. 11, 99th Cong., 1st Sess. 58 (1986). The *Lone Pine Steering* case held that the plaintiff could bring neither constitutional nor statutory challenges until the EPA brought an enforcement action under CERCLA. 600 F.Supp. at 1494–1500.[9]

---

9. The notation of the *Lone Pine Steering* case is particularly telling of Congress' intent to preclude constitutional as well as statutory claims. Prior to the enactment of SARA, certain courts had disagreed with the *Lone Pine Steering* case and had found that the statutory scheme of

CERCLA was not intended to bar constitutional challenges. *See, e.g., Wagner Electric Corp. v. Thomas,* 612 F.Supp. 736 (D.Kan.1985); *Aminoil, Inc. v. EPA,* 599 F.Supp. 69 (C.D.Cal.1984). By citing the *Lone Pine Steering* case, the Senate Environment and Public Works Committee

The reports from various House committees suggest similar intent to exclude all pre-enforcement review by federal courts except as enumerated in the statute.[10] For example, the House Committee on Energy and Commerce Report stated:

> The section is intended to codify the current position of the Administrator and the Department of Justice with respect to preenforcement review: there is no right of judicial review of the Administrators selection and implementation of response actions until after the response action have been completed....

H.R.Rep. No. 253(I), 99th Cong., 1st Sess., 81 (1986), *reprinted in,* 1986 U.S. Cong. & Admin. News 2835, 2863.[11]

In sum, the plain language and legislative history of section 113(h) present "clear and convincing evidence" that Congress intended to bar all pre-enforcement challenges to EPA actions under CERCLA. Despite the presumption to the contrary, this Court cannot find " 'a construction of the statute [that] is fairly possible by which the constitutional questions may be avoided.' " *Robison,* 415 U.S. at 361, 94 S.Ct. at 1160 (quoting *United States v. Thirty-seven Photographs,* 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971)). This conclusion conforms to the other court opinion which has directly faced this question of congressional intent. *See South Macomb,* 681 F.Supp. at 1251. Thus, this Court must examine whether, on the facts of this case, Congress has the power to delay due process review of section 107(*l*) until the EPA seeks to enforce the lien.

## 2. Congress' Power to Limit Due Process Review

Article III of the Constitution dictates that "[t]he judicial Power of the United States shall be vested in one supreme Court, and in such inferior courts as Congress may from time to time ordain and establish." Under this constitutional mandate, lower federal courts have limited jurisdiction and Congress has the power to decide those limitations.

> [T]he judicial power of the United States, although it has its origins in the Constitution is (except in enumerated instances, applicable exclusively to this [Supreme] court) dependent for its distribution, and the modes of its exercise, entirely upon the action of Congress, who possess the sole power of creating the tribunals (inferior to the Supreme Court) for the exercise of judicial power, and of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good.

*Cary v. Curtis,* 44 U.S. (3 How.) 236, 244, 11 L.Ed. 576 (1845) (footnotes omitted). *See also Kline v. Burke Construction Co.,* 260 U.S. 226, 233–34, 43 S.Ct. 79, 82–83, 67 L.Ed. 226 (1922). The scope of Congress'

---

clearly suggests that section 113(h) was intended to bar constitutional, as well as, statutory claims.

**10.** *See, e.g.,* H.R.Rep. No. 253(I) (House Energy and Commerce Committee), 99th Cong., 1st Sess. 80–81 (1986), *reprinted in* 1986 U.S.Code Cong. & Admin. News 2862–63; H.R.Rep. No. 253(III) (House Judiciary Committee), 99th Cong., 1st Sess. 21–23 (1986), *reprinted in,* 1986 U.S.Code Cong. & Admin. News 3044–46; H.R. Rep. No. 253(V), 99th Cong., 1st Sess. 24–26 (1986), *reprinted in,* 1986 U.S.Code Cong. & Admin. News 3147–49; H.R.Conf.Rep. No. 962, 99th Cong., 1st Sess. 223–24 (1986), *reprinted in,* 1986 U.S.Code Cong. & Admin. News 3316–17.

**11.** Only the House Judiciary Committee voiced any concern regarding the potential preclusion of all judicial review under section 113(h).

> The Judiciary Committee believes in somewhat broader access to judicial review of the selection of a response action need not prevent expeditious clean-ups, and that the availability of such review is necessary as a check on agency decision-making and to assure the selection of proper action. *In addition, the degree to which the Energy and Commerce Committee version [of section 113(h)] precludes pre-enforcement judicial review raises constitutional due process concerns, as well as concerns regarding basic fairness.*

H.R.Rep. No. 253(III), 99th Cong., 1st Sess. 22 (1986), *reprinted in,* 1986 U.S.Code Cong. & Admin. News 3045 (emphasis added). The amendments suggested by the House Judiciary Committee did not provide for constitutional challenges, and, furthermore, the amendments were not accepted by the House–Senate Conference. *See id.;* H.R.Conf.Rep. No. 962, 99th Cong., 1st Sess. 223–24 (1986), *reprinted in,* 1986 U.S.Code Cong. & Admin. News 3316–17.

power to describe federal court jurisdiction, however, appears to be subject to some narrow limitation. *See Bartlett,* 816 F.2d at 704–07 (discussing the limits on Congress' power to restrict federal court jurisdiction); L. Tribe, American Constitutional Law 42–61 (same); Sager, *The Supreme Court, 1980 Term—Foreword: Constitutional Limitations on Congress' Authority to Regulate the Jurisdiction of Federal Courts,* 95 Har.L.Rev. 17 (1981).

The Supreme Court has suggested that Congress may not have the power to completely deny judicial review of constitutional claims. *See Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977); *Oestereich v. Selective Service Sys.,* 393 U.S. 233, 243 n. 6, 89 S.Ct. 414, 419 n. 6, 21 L.Ed.2d 402 (1968) (Harlan, J., concurring); *St. Joseph Stock Yards Co. v. United States,* 298 U.S. 38, 84, 56 S.Ct. 720, 740, 80 L.Ed. 1033 (1936) (Brandeis, J., concurring); *Martin v. Hunter's Lessee,* 14 U.S. (1 Wheat.) 304, 330–33, 4 L.Ed. 97 (1816). Congress clearly has the authority to alter or limit the forum in which constitutional claims may be brought in federal court. *See Yakus v. United States,* 321 U.S. 414, 434–38, 64 S.Ct. 660, 671–74, 88 L.Ed. 834 (1944). But, as noted by the Supreme Court in *Michigan Academy,* " 'all agree that Congress cannot bar all remedies for enforcing federal constitutional rights.' " 476 U.S. at 681 n. 12, 106 S.Ct. at 2141 n. 12 (quoting Gunther, *Congressional Power to Curtail Federal Court Jurisdiction: An Opinionated Guide to the Ongoing Debate,* 36 Stan.L.Rev. 895, 921 n. 13 (1984)).

Courts of appeal have also recognized that federal courts must retain their essential function of reviewing congressional provisions for due process violations. *See Bartlett,* 816 F.2d at 704–07; *Battaglia v. General Motors,* 169 F.2d 254, 257 (2d Cir.), *cert. denied,* 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425 (1948). In *Battaglia,* the Court of Appeals for the Second Circuit reviewed a statutory amendment despite Congress' intent to withdraw jurisdiction from the federal courts. The court stated:

> We think ... that the exercise by Congress of its control over jurisdiction is subject to compliance at least with the requirements of the Fifth Amendment. That is to say, while Congress has the undoubted power to give, withhold, and restrict the jurisdiction of the federal courts other than the Supreme Court, it must not so exercise that power to deprive any person of life, liberty or property without due process of law or to take property without just compensation.

*Battaglia,* 169 F.2d at 257. The court went on to assert jurisdiction for the purpose of reviewing the statute for due process violations. *Id.* In light of these limitations on Congress' power, this Court must again scrutinize section 113(h) of CERCLA to see if Congress has provided an adequate judicial forum for due process review of section 107(*l* ).

█ In the particular circumstances of this case, section 113(h) of CERCLA operates to prevent the Reardons from asserting their constitutional claim in any judicial forum. Section 113(b) provides that federal courts shall have exclusive, original jurisdiction over all claims arising from CERCLA. Section 113(h), however, bars "any challenge" of removal or remedial actions until the EPA or another party brings an enforcement action. Generally, this provision for delayed review creates the opportunity for adequate review of constitutional claims. *See, e.g., United States v. Fisher,* 864 F.2d 434, 438–39 (7th Cir. 1988) (court reviewed for due process constitutionality when EPA brought action to enforce order under section 106; *United States v. M. Genzale Plating, Inc.,* 723 F.Supp. 877, 885 (E.D.N.Y.1989) (court reviewed for due process challenges when EPA sought injunction to enforce order under section 104). In most circumstances, the alleged constitutional wrong does not occur until the EPA seeks to recover its costs for a cleanup or the EPA seeks an order enforcing its desired plan for cleanup. *See Fisher,* 864 F.2d at 438–39 (alleged unconstitutional "taking" did not occur until EPA entered property under court injunction). In the context of a federal lien under section 107(*l* ) of CERCLA, however,

the alleged constitutional wrong is immediate.

Under section 107(*l*), the federal lien arises automatically upon the EPA incurring costs in a cleanup of property and the EPA giving notice of the lien to the owner of land affected by their cleanup. In this case, the Reardons allege that the lien is a deprivation of a significant property interest and that they are entitled to some due process safeguards either before or after the lien is created. As such, the Reardons allege a present and ongoing constitutional wrong. This claim arises under CERCLA and must be asserted in federal court. Section 113(h), however, bars any federal court from hearing the Reardons' claim until the EPA decides to bring an action to enforce the lien. In this case, section 113 of CERCLA does not provide a statutory alternative for administrative review nor does the statute require the EPA to initiate an enforcement activity at any time prior to the exhaustion of the statute of limitations period. Consequently, the Reardons have alleged a present and ongoing constitutional wrong, but Congress has provided no forum in which to assert their constitutional claim.[12]

In light of this particular circumstance, the limitations on Congress' powers to describe federal jurisdiction dictate that section 113(h) not limit this Court's authority to review the Reardons' constitutional claim.[13] This Court must retain jurisdiction of this case for the limited purpose of reviewing section 107(*l*) for procedural due process infirmities. Thus, within this narrow jurisdictional scope, this Court turns to the merits of the Reardons' constitutional claim.

### IV.

 The next issue presented is whether the Reardons are entitled to a preliminary injunction based on their claim that section 107(*l*) of CERCLA violates their due process rights under the fifth amendment. In order to grant the preliminary injunction, the Reardons must demonstrate:

> (1) irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on [the opposing party]; (3) a likelihood of success on the merits; and (4) that the public interest would not be adversely affected by the granting of the injunction.

*Lancor v. Lebanon Housing Authority,* 760 F.2d 361, 362 (1st Cir.1985). *See also Auburn News Co., Inc. v. Providence Journal Co.,* 659 F.2d 273, 277 (1st Cir. 1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982). Of these four factors, the likelihood of success on the merits component is the most critical in deciding whether to grant injunctive relief. *Id.* In light of this standard, this Court shall review the merits and equities of the Reardons' constitutional claim.

### A. Likelihood of Success on the Merits

The fifth amendment provides that "no person ... shall ... be deprived of life, liberty or property without due process of law." The Supreme Court has interpreted the due process clause to require that before the United States can deprive any person of "any significant property interest," the person must be given notice of the deprivation and an opportunity for a hearing "at a meaningful time and in a meaningful manner." *Boddie v. Connecticut,* 401 U.S. 371, 378–79, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (quoting, in part, *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). *See Mullane v. Central Hanover Bank & Trust*

---

**12.** In fact, under sections 107 and 113 of CERCLA, the Reardons may never receive any judicial review of the federal lien. If the EPA chose not to seek a cost recovery action, for whatever reason, and the statute of limitations on their cause of action was exhausted, then the federal lien would have been imposed and lifted without the Reardons ever receiving an opportunity to challenge the federal lien.

**13.** This Court notes that prior to the enactment of section 113(h), courts did not hesitate to review CERCLA provisions for due process claims while at the same time declining to review EPA actions for statutory claims. *See Wagner Seed,* 800 F.2d at 314–17; *Solid State,* 812 F.2d at 386 (affirming district court review of CERCLA on due process grounds even after passage SARA amendments and section 113(h)).

*Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950). Under this analysis, the due process clause requires prior notice and a pre-deprivation hearing only where the statute authorizes the taking of a "significant property interest" protected by the fifth amendment. *Fuentes v. Shevin,* 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972). Furthermore, the nature and timing of the hearing depends on several factors including: the importance of the property right involved, the risk of erroneous deprivation and the value of additional procedural safeguards, and the nature of government interests involved as well as the fiscal and administrative burden of additional safeguards. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

In this case, the crucial determination is whether the federal lien constitutes a deprivation of significant property interest requiring procedural due process safeguards. The Reardons argue that the federal lien imposed under 107($l$) operates like a notice of lis pendens and constitutes a deprivation of their property interests in Kerry Place. In response, the United States claims that the federal lien is more analogous to a non-possessory statutory lien which does not deprive the Reardons of a significant property interest protected by the fifth amendment. In analyzing these arguments, this Court shall briefly review the applicable case law.

The Supreme Court has not clearly delineated what constitutes a deprivation of a significant property interest for purposes of the due process clause. The principal Supreme Court cases describing procedural due process involve the complete dispossession of property. *See, e.g., Sniadach v. Family Finance Corp.,* 395 U.S. 337, 338–42, 89 S.Ct. 1820, 1821–23, 23 L.Ed.2d 349 (1969) (creditor garnished wages of debtor in hands of employer); *Goldberg v. Kelly,* 397 U.S. 254, 255–56, 90 S.Ct. 1011, 1014, 25 L.Ed.2d 287 (1970) (welfare benefits terminated by government agency); *Fuentes,* 407 U.S. at 73–78, 92 S.Ct. at 1990–93 (creditor replevied household goods in which creditor retained a security interest); *North Georgia Finishing, Inc. v. Di-*

*Chem, Inc.,* 419 U.S. 601, 603–04, 95 S.Ct. 719, 721, 42 L.Ed.2d 751 (1975) (bank account of debtor garnished pending litigation). The Supreme Court has suggested that due process concerns may be triggered by something less than a total deprivation of property. *See Fuentes,* 407 U.S. at 86, 92 S.Ct. at 1997. In *Fuentes,* the Court stated that due process applied to the deprivation of "any significant property interest," and that even "temporary non-final deprivation of property is nonetheless a 'deprivation' in terms of" the due process clause. *Id.* at 85–86, 92 S.Ct. at 1996.

Courts have recognized that attachments of property through state lis pendens statutes may cause a deprivation of a significant property interest requiring some procedural due process protections. *See, e.g., Chrysler Corp. v. Fedders Corp.,* 670 F.2d 1316 (3d Cir.1982); *Bay State Harness Horse Racing & Breeding Association v. PPG Industries, Inc.,* 365 F.Supp. 1299 (D.Mass.1973) (three judge panel); *Gunter v. Merchants Warren Nat. Bank,* 360 F.Supp. 1085 (D.Me.1973) (three judge panel); *Clement v. Four North State Street Corp.,* 360 F.Supp. 933 (D.N.H.1973) (three judge panel). Other courts, however, have found that the attachment of property by a notice of lis pendens does not constitute the deprivation of a significant property interest for the purposes of the due process clause. *See Batey v. Digirolamo,* 418 F.Supp. 695 (D.Haw.1976); *Debral Realty, Inc. v. DiChiara,* 383 Mass. 559, 420 N.E.2d 343 (1981); *George v. Oakhurst Realty, Inc.,* 414 A.2d 471 (R.I.1980); *Empfield v. Superior Court,* 33 Cal.App.3d 105, 108 Cal.Rptr. 375 (1973). In this district, the three judge panel in *Bay State* reasoned:

> [E]ven viewing the attachment as a non-possessory lien (*Cohen v. Wasserman* 238 F.2d 683 (1st Cir.1956)), or as merely an encumbrance or cloud on the title (*N.Y.N.H. & H.R.R. v. Butter,* 276 Mass. 236, 176 N.E. 797 (1931)), the interest created by the attachment operates as a superior interest against subsequent purchasers, mortgages or attaching creditors, and thus restricts the owner's abili-

ty to sell or mortgage the property at its full value. The determinative impact of the attachment is that it deprives the owner of a property right or interest significant not only to him in his use of the property but to the attaching party as well. The nature of such deprivation has been recognized by earlier courts which refused to sustain a constitutional challenge to prejudgment attachments. Thus in *McInnes v. McKay*, 127 Me. 110, [141 A. 699], aff'd 279 U.S. 820, [49 S.Ct. 344, 73 L.Ed. 975] (1929) the court said:

> Deprivation does not require actual physical taking of property or the thing itself. It takes place when the free use and enjoyment of the thing or the power to dispose of it at will is affected.

365 F.Supp. at 1304–05 (citations omitted). The Supreme Court has not addressed whether attachment of property under a state lis pendens statutes amounts to a deprivation of a significant property interest.

The Supreme Court, however, has affirmed that the filing of a statutory lien does not amount to a taking of a significant property interest protected by the due process clause. *Speilman–Fond, Inc. v. Hanson's, Inc.*, 379 F.Supp. 997 (D.Ariz.1973) (three judge panel), *aff'd*, 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974). In *Speilman–Fond*, the three-judge panel held that the restriction imposed on the alienation of property by the mechanic's lien was not a significant property interest protected by the due process clause. *Id.* at 999. The court said:

> Here, a lien is filed against the property and clouds title. It cannot be denied that the effect of such lien may make it difficult to alienate the property. If the plaintiffs can find a willing buyer, however, there is nothing in the statutes or the liens which prohibits the consummation of the transaction. Even though a willing buyer may be more difficult to find, once he is found there is nothing to prevent plaintiffs from making the sale to him. The liens do nothing more than impinge upon economic interests of the property owner. The right to alienate

has not been harmed, and the difficulties which the lien creates may be ameliorated through the use of bonding or title insurance.

*Id.* at 999. The court in *Speilman–Fond* distinguished the cases of *Sniadach*, *Goldberg*, and *Fuentes* on the grounds that those cases involved an actual taking of property. The court said:

> The instant case, by contrast, presents no actual taking of possession of any kind from plaintiffs. Indeed, the stipulated facts demonstrate that the plaintiffs remain in continued possession of their land and continue to rent mobile home spaces to the tenants who are unaware of the lien claims. Thus, plaintiffs here have not been deprived of possession or use of their property as were the cases in *Sniadach*, *Goldberg*, and *Fuentes*. (citations omitted)

379 F.Supp. at 999. The Supreme Court subsequently summarily affirmed the opinion in *Speilman–Fond* which binds all lower courts as to the precise issues determined. *See Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 182–83, 99 S.Ct. 983, 989–990, 59 L.Ed.2d 230 (1979).

In this case, the federal lien under section 107($l$) appears analogous to the mechanic's lien in *Speilman–Fond*. The federal lien arises to protect the funds expended by the government in cleaning up the Reardons' property. The mechanic's lien similarly arises to protect the goods and services provided by a seller to benefit the purchaser's property. The amount of the federal lien is determined by the amount of money expended cleaning up the Reardons' property. The amount of the mechanic's lien is similarly determined by the value of the goods and services sold to the purchaser. Furthermore, the federal lien, like a mechanic's lien, corresponds to the enhanced value of the Reardons' property, and the lien is imposed to prevent the unjust enrichment of the Reardons.

The federal lien, like a mechanic's lien, does not interfere with the Reardons' ability to use or possess Kerry Place. The

federal lien does act as a cloud on the title and may impinge the right to alienate the property, just like the mechanic's lien. The federal lien, however, does not bar the subsequent transfer of the Reardons' property, and the federal lien only affects the Reardons' economic interests in Kerry Place. Finally, while this Court recognizes the federal lien may appear similar in some respects to an attachment of property under a lis pendens statute, the federal lien is clearly more analogous to a statutory mechanic's lien.[14]

Consequently, in light of the Supreme Court's affirmance of *Speilman–Fond,* the federal lien under section 107(*l*) of CERCLA does not appear to constitute the deprivation of a substantial property interest protected by the fifth amendment. Reaching this conclusion, this Court need not discuss whether the statute provides for adequate procedural safeguards, and, under the standard for preliminary injunction, the Reardons' constitutional claim is unlikely to succeed on the merits.

B. Equities of Reardons' Constitutional Claim

In fully examining the Reardons' claim for a preliminary injunction, this Court also notes that the Reardons have failed to satisfy all the elements required for equitable relief. First, the nature of the Reardons' actual injury is unclear. The Reardons have benefited substantially from the EPA's cleanup of Kerry Place. There is evidence in the record that the EPA has spent roughly $200,000 in removing PCB contaminated soil from Kerry Place and that the EPA has expended much more resources in testing soils and planning for further cleanup. Absent the EPA's intervention and cleanup, the Reardons may have had to clean up Kerry Place at their own expense. Given that the EPA is seeking to distribute the costs for the cleanup over several present and past landowners,

the EPA action may in fact be saving the Reardons substantial amounts of money.

Second, the harm to the EPA in granting the injunction could be great. The EPA has already expended money and resources at the Kerry Place property. The Reardons have transferred various lots of Kerry Place since the EPA's initial removal action on Kerry Place. If this Court were to enjoin the EPA from imposing the lien, the EPA would have no secured interest against subsequent purchasers of lots at Kerry Place.

Third, the public interest favors denying the requested injunctive relief. The lien operates to give notice to subsequent purchasers of lots at Kerry Place of the government's interests in the property as a result of the cleanup. Further, the lien operates as part of the EPA's overall plan to clean up the entire Norwood site and thereby remedy a serious public health problem. Finally, the federal lien secures the expenditure of public funds used in cleaning up the Norwood site, and, as such, the lien acts to ensure that, wherever possible, responsible parties will reimburse the public for cleaning up hazardous waste sites.

In sum, the Reardons have failed to demonstrate that they are entitled to a preliminary injunction based on their constitutional claim. Under present case law, the federal lien does not amount to a deprivation of a significant property interest protected by the due process clause, and thus the Reardons are unlikely to succeed on the merits of their claim. Further, the balance of the remaining equities does not favor the Reardons' requested injunctive relief. Consequently, the Reardons' request for a preliminary injunction should be denied.

V.

To conclude, the Reardons' statutory claims, counts one and three in the com-

---

**14.** The federal lien appears to operate like a notice of lis pendens since the lien requires the EPA to file notice in the local registry office and the lien acts to give notice of the EPA's pending legal claim for cleanup costs. The federal lien, however, secures the government's interest in the funds it has expended cleaning up the Reardon's property and enhancing its value. The federal lien does not operate as security for a claim unrelated to the Reardons' property. As such, the federal lien is distinguishable from a notice of lis pendens.

plaint, should be dismissed for lack of subject matter jurisdiction. The Reardons' constitutional claim, count three of the complaint, requesting a preliminary injunction should be denied on the merits.

Order accordingly.